Ernesto Alonso MEJIA RODRIGUEZ, Petitioner-Appellant,

v.

Janet RENO, as Attorney General of the United States, and the Immigration and Naturalization Service, Respondents-Appellees.

Ernesto Alonso Mejia Rodriguez, Petitioner,

v.

Immigration and Naturalization Service, Respondent.

Nos. 98-4426, 98-5878.

United States Court of Appeals,

Eleventh Circuit.

June 22, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-CV-3108), Joan A. Lenard, Judge.

Petition for Review from the Board of Immigration Appeals.

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit Judge.[*]

HULL, Circuit Judge:

This consolidated case involves two separate appeals. First, in 1997 Appellant Ernesto Alonso Mejia Rodriguez ("Mejia") filed a motion to reopen his deportation proceedings, which became final in 1994. The BIA denied Mejia's motion to reopen. In appeal No. 98-5878, Mejia has filed a petition for review in this Court appealing the BIA's denial of his motion to reopen.

While his motion to reopen was still pending before the BIA, Mejia filed a § 2241 petition in September 1997 challenging his 1994 deportation order. In appeal No. 98-4426, Mejia appeals the district court's dismissal of his § 2241 petition. After review, we affirm the BIA's denial of Mejia's motion to reopen in appeal No. 98-5878. Because in addressing Mejia's petition for review we reach all of the issues raised

---

[*]This decision is rendered by a quorum due to Judge Henderson's death on May 11, 1999. *See* 28 U.S.C. § 46(d).

1

in Mejia's § 2241 petition, we affirm the district court's dismissal of Mejia's § 2241 petition but do so because Mejia's § 2241 petition is now moot.

I.      *Facts and Procedural History*

Mejia is a native of Honduras who lawfully entered the United States as a nonimmigrant visitor on November 17, 1980.

A.      *Mejia's Criminal Offense*

On April 14, 1986, Mejia was charged in Florida state court with possession of cocaine, trafficking in cocaine, and conspiracy. On July 24, 1986, Mejia pled no contest to the cocaine-trafficking charge. As part of a plea agreement, the court withheld a final adjudication of guilt and sentenced Mejia to a one-year term of youth-offender incarceration and two years to be served in a "Community Control Program."

Mejia introduced evidence in the district court which established that he entered his no-contest plea in reliance on certain representations.[1] Specifically, both the trial court and Mejia's counsel advised him that his no-contest plea would not yield any adverse immigration consequences. In addition, Mejia was advised that his criminal record would be sealed upon completion of his probationary sentence.

Prior to his first deportation hearing, Mejia filed a petition in Florida state court to seal his criminal record. The Florida court denied Mejia's petition. After his first deportation hearing, Mejia filed a motion for reconsideration of the state court's denial of his petition to seal his criminal record. Mejia's motion contended that he entered his no-contest plea in reliance on the court's representation that his criminal record would be sealed and that his plea would not cause any "immigration problems." On December 4, 1990, the state court granted Mejia's petition to seal his criminal records.

B.      *Deportation Proceedings Concluded in 1994*

On March 8, 1990, the INS commenced deportation proceedings against Mejia. The INS issued an Order to Show Cause which asserted two grounds for deportation. First, the INS charged Mejia with

---

[1]Mejia established the terms of his plea agreement and his plea colloquy through affidavits from his attorney, the prosecutor, and the sentencing judge.

2

deportability under INA § 241(a)(2), 8 U.S.C. § 1251(a)(2) (1990), as an alien who had entered the United States without inspection by an immigration officer, and under INA § 241(a)(11), 8 U.S.C. § 1251(a)(11) (1990), as an alien convicted of a crime involving controlled substances.

On December 6, 1990, the INS amended its show-cause order withdrawing these two grounds for deportation and charging Mejia with deportability under INA § 241(a)(2), 8 U.S.C. § 1251(a)(2)(1990), for overstaying his nonimmigrant visa. The INS alleged that Mejia originally had entered the United States as a nonimmigrant visitor and later changed his status to nonimmigrant student. According to the INS, Mejia's nonimmigrant-student visa expired in August 1990.

After the state court had sealed Mejia's criminal record, the immigration judge found Mejia deportable. On January 24, 1991, the immigration judge entered a deportation order concluding that Mejia had unlawfully remained in the United States beyond the period allowed by his nonimmigrant visa. However, the immigration judge allowed Mejia leave to file for "suspension of deportation." On February 21, 1991, Mejia filed for suspension of deportation under INA § 244, 8 U.S.C. § 1254(a)(2) (1991).[2]

---

[2]At the time of Mejia's initial deportation proceedings, the Attorney General could order the "suspension of deportation" if: (1) deportation was based on certain specified grounds, (2) the alien had "been physically present in the United States for a continuous period of not less than seven years immediately preceding" the application for suspension or "physically present in the United States for a continuous period of not less than ten years" after becoming deportable, (3) in that time was a person of "good moral character", and (4) in the opinion of the Attorney General, deporting the alien would cause "exceptional and extremely unusual hardship" to the alien or any of the alien's "spouse, parent, or child" who are United States citizens. INA § 244(a)(2), 8 U.S.C. § 1254(a)(2) (1991). At the time of Mejia's deportation proceedings, INA § 101(f) listed a number of factors that precluded an alien from being considered a "person of good moral character", and this list included aliens who are deportable for a conviction involving controlled substances. INA § 101(f), 8 U.S.C. § 1101(f) (1991).

Even if Mejia had met the first three requirements for suspension of deportation, he has not demonstrated that he would have received suspension of deportation. Mejia does not contend that he has a spouse, parent, or child who are United States citizens. Thus, Mejia would have had to demonstrate that his deportation would cause him to suffer exceptional and unusual hardship. The Attorney General possessed the discretion to construe narrowly the "exceptional and extremely unusual hardship" element of the suspension-of-deportation analysis. *Gomez-Gomez v. INS,* 681 F.2d 1347, 1349 (11th Cir.1982). *See* footnote 8 *infra.*

3

The INS immediately moved to pretermit Mejia's motion for suspension of deportation. The INS argued that Mejia's drug conviction precluded a finding that Mejia had been a person of "good moral character," thus rendering him ineligible for a suspension of deportation.

On August 2, 1991, following a hearing, the immigration judge granted the INS' motion to pretermit Mejia's motion for a suspension of deportation and ordered Mejia deported to Honduras. First, the immigration judge admitted into evidence the records of Mejia's cocaine conviction that had been sealed by the Florida state court. The immigration judge specifically noted that he admitted the records only for the purpose of considering Mejia's application for suspension of deportation and not to establish another ground for deportation. The immigration judge found that these records established a conviction as defined under federal immigration law. Based on his conviction for cocaine trafficking, the immigration judge found that Mejia could not be deemed a person of "good moral character" and therefore could not meet the requirements for suspension of deportation under INA §§ 244(a)(2) & 101(f), 8 U.S.C. § 1254(a)(2) & 1101(f) (1991).[3]

Mejia appealed the immigration judge's August 1991 decision to the BIA, and on January 12, 1994, the BIA affirmed the deportation order entered by the immigration judge. First, the BIA concluded that the immigration judge properly found Mejia deportable for remaining in the United States following the expiration of his student visa. In doing so, the BIA also rejected Mejia's claim that he remained in the United States only to contest his deportation. In addition, the BIA upheld the immigration judge's determination that Mejia had been "convicted" for the purposes of federal immigration law regardless of the fact that the state court had ordered Mejia's records sealed. As a result of this conclusion, the BIA found that Mejia was within a class of aliens who could be deported based on a controlled-substance conviction and therefore concluded that the immigration judge properly found that Mejia was ineligible for a suspension of deportation.

C.    *Mejia is a Fugitive from May 1995 Until September 1997*

---

[3]IIRIRA replaced suspension of deportation with a new, and somewhat similar, procedure called "cancellation of removal." INA § 240A, 8 U.S.C. § 1229b (Supp.1998).

In a letter dated April 12, 1995, the INS informed Mejia that he was scheduled to be deported on May 12, 1995, and ordered him to report to the INS on that date for deportation to Honduras. Mejia did not appear for deportation as ordered. Although Mejia could have sought judicial review of the BIA's January 1994 decision, he did not do so and instead absconded.

D.      *Drug Conviction Vacated in 1997*

While he remained a fugitive from deportation, on May 21, 1997, Mejia petitioned in Florida state court for a writ *coram nobis* in which he sought to vacate his drug-trafficking conviction. Mejia contended that he did not receive effective assistance of counsel in his state criminal proceedings because he was not informed of the immigration consequences of his no-contest plea.

On August 1, 1997, the state court vacated Mejia's plea and sentence. Subsequently, the Florida State's Attorney announced a *nolle prosequi* of the cocaine-trafficking charges against Mejia.

E.      *BIA Denies Mejia's Motion to Reopen Deportation Proceedings*

On September 23, 1997, the INS took Mejia into custody to execute the final deportation order entered in January 1994. On September 26, 1997, Mejia filed two motions to reopen his deportation proceedings—one with the immigration judge and one with the BIA. According to Mejia, the immigration judge refused to accept this motion. Before the BIA, Mejia argued that his application for suspension of deportation had been pretermitted based on a criminal conviction and that this conviction was vacated after his suspension application had been pretermitted. Thus, Mejia contended that the BIA should reopen his deportation proceeding to allow him to file another application for suspension of deportation.

In an order dated November 27, 1998, the BIA denied Mejia's motion to reopen his deportation proceedings. The BIA noted that under 8 C.F.R. § 3.2(c)(2) a motion to reopen deportation proceedings must be filed within 90 days of the BIA's decision or before September 30, 1996, whichever is later. As Mejia did not file his motion to reopen until September 1997, the BIA concluded that his motion was not timely filed.

5

On December 14, 1998, Mejia filed, in this Court, a petition for review of the BIA's November 1998 order. *Mejia-Rodriguez v. INS,* No. 98-5878.

F.      *Mejia's Petition for a Writ of Habeas Corpus*

On September 26, 1997, while his motion to reopen his deportation proceedings was still pending before the BIA, Mejia filed a § 2241 petition for habeas corpus in United States District Court for the Southern District of Florida.  28 U.S.C. § 2241.  In this petition, Mejia alleged that the immigration judge's order pretermitting Mejia's application for suspension of deportation was based upon an unconstitutional conviction subsequently vacated by the Florida state courts.  Mejia's petition further alleged that this ineffective assistance of counsel in state court unconstitutionally tainted Mejia's federal immigration proceedings because it had the collateral effect of precluding Mejia's application for suspension of deportation, which was provided for under federal law.  Finally, Mejia alleged that denying him the right to seek a suspension of deportation based on his unconstitutionally obtained state drug conviction constituted a deprivation of due process.

On September 26, 1997, the district court dismissed Mejia's *habeas* petition and denied his request for a stay of deportation.  The district court found that Mejia's petition was not timely filed under INA § 106(a)(1), 8 U.S.C. § 1105a(a)(1) (1996).

Mejia filed a motion for reconsideration of the court's order and for a stay of his deportation.  In his motion, Mejia argued that the district court had erroneously relied on INA § 106(a)(1), a statute that had been repealed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and that his petition was based on 28 U.S.C. § 2241—not INA § 106(a)(1).  On October 7, 1997, the district court granted Mejia's motion to the extent it sought a stay of his deportation.  The court denied Mejia's motion for reconsideration in an order dated November 14, 1997.

G.      *Mejia's Renewed Habeas Petition*

6

On November 21, 1997, Mejia filed a renewed petition for habeas corpus under the same civil action number in the district court. In his new petition, Mejia reiterated the claims that he asserted in his initial petition and again asserted § 2241 as the sole basis for the court's jurisdiction.

On March 12 1998, the district court dismissed Mejia's renewed petition and denied his request for a stay of deportation. The district court found that under 8 C.F.R. § 3.23, a motion for reconsideration of an "administrative order of removal, deportation, or exclusion" must be filed within thirty days of the order or before July 31, 1996, whichever is later, and a motion to reopen deportation proceedings must be filed within ninety days of the final order or before July 31, 1996, whichever is later. The district court further noted that Mejia did not file his motion to reopen until September 26, 1997, and that because the motion was not timely filed, the immigration judge refused to consider his motion.

The district court reasoned that essentially Mejia's habeas corpus petition "invited the court" to force the immigration judge to consider an untimely motion to reopen that the judge had refused to consider. The district court concluded that it "must decline that invitation."

On March 12, 1998, Mejia filed a Notice of Appeal of the district court's decision and, on March 13, 1998, this Court temporarily stayed Mejia's deportation pending appeal.

II.     *Discussion*

A.      *Mejia's Two Appeals*

Two appeals are involved in this case. First, Mejia appeals the district court's dismissal of his § 2241 petition. Second, Mejia petitions for review of the BIA's order denying his motion to reopen. Mejia raises similar arguments in both of these appeals. Indeed, in his brief, Mejia argues that if he is afforded a full review on his petition for review, this Court need not address his appeal of the district court's dismissal of Mejia's § 2241 petition. Because we have considered all of Mejia's claims through his petition for review, particularly his ineffective-assistance claim, we do not decide whether the district court properly exercised

7

jurisdiction over Mejia's § 2241 petition. Instead, we reach the merits of Mejia's petition for review and dismiss the § 2241 petition as moot.[4]

Likewise, we do not reach the issue of whether Mejia's petition for review is governed by the INA prior to the amendments by IIRIRA or by the INA as amended by IIRIRA. Mejia's 1994 deportation order became final prior to IIRIRA's enactment, but Mejia's motion to reopen was filed after IIRIRA's general effective date. A split in the circuits exists over whether a motion to reopen is a new proceeding or a continuation of the deportation proceedings. *Lerma de Garcia v. INS,* 141 F.3d 215 (5th Cir.1998); *Sarmadi v. INS,* 121 F.3d 1319, 1321 (9th Cir.1997); *Chow v. INS,* 113 F.3d 659, 665 (7th Cir.1997) *with Wright v. Ouellette,* 171 F.3d 8, 12 (1st Cir.1999). If a motion to reopen constitutes a new proceeding, judicial review of the BIA's denial of Mejia's motion to reopen would be governed by the INA as amended by IIRIRA. However, former INA § 106(a)(2) provided for jurisdiction in this Court over petitions for review challenging final deportation orders, and under INA §§ 242(b)(2) & (9), enacted by IIRIRA, this Court has jurisdiction over petitions for review "arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1105a(a) (1995); 8 U.S.C. §§ 1252(b)(2) & (9) (Supp.1998). Thus, this Court would have jurisdiction over Mejia's petition for review under either the pre-IIRIRA or post-IIRIRA INA and we do not resolve the issue of whether the INA prior to the IIRIRA amendments, or the post-IIRIRA INA, applies to the judicial review of Mejia's deportation

B.      *Standard of Review*

This Court reviews the BIA's denial of a motion to reopen for an abuse of discretion. *Gomez-Gomez v. INS,* 681 F.2d 1347, 1348 (11th Cir.1982).

C.      *Mejia's Untimely Motions to Reopen*

---

[4]Mejia did not raise his ineffective-assistance of counsel argument before the BIA. Arguably, Mejia's failure to present his ineffective-assistance claim to the BIA precludes the assertion of the ineffective-assistance claim in Mejia's petition for review. *Mojsilovic v. INS,* 156 F.3d 743, 748 (7th Cir.1998). Other courts have found that an alien can raise an ineffective-assistance claim for the first time in a petition for review. *See, e.g. Szilagyi v. INS,* 131 F.3d 148 (9th Cir.1997). We do not reach this issue because we find that, in any event, Mejia has not established an ineffective-assistance claim.

8

Mejia has not established that the BIA abused its discretion in denying his motion to reopen and has not established that he has suffered any constitutional injury in his deportation proceedings. Mejia argues that he continues to suffer the consequences of the ineffective assistance of counsel that he received in his state criminal proceeding because his unconstitutional conviction has rendered him ineligible for suspension of deportation. According to Mejia, his ineligibility for suspension represents a continuing violation of his Sixth Amendment right to the effective assistance of counsel. Importantly, however, the BIA did not address Mejia's ineffective-assistance argument. Instead, the BIA simply rejected Mejia's attempts to reopen his deportation proceedings because Mejia's motions to reopen were filed long after the expiration of the time period for filing motions to reopen under the BIA's regulations.

The BIA correctly concluded that Mejia's motions were untimely. Pursuant to 8 C.F.R. § 3.2(c)(2), a motion to reopen deportation proceedings must be filed within 90 days of the "final administrative decision" by the BIA or before September 30, 1996, whichever is later. Mejia did not file his motion to reopen until September 26, 1997—many more than 90 days after his final deportation order, which was entered in 1994, and almost a year after the September 30, 1996 deadline.[5]

Limitations periods are not inherently suspect. The Supreme Court noted in *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), that "[f]inality ... enhances the quality of judging." Similarly, the Supreme Court has recognized the obvious fact that limitations periods will necessarily preclude the litigation of certain meritorious claims. *Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Nevertheless, the Court has found that "[s]tatutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Id.* at 488, 100 S.Ct. 1790. Thus, even assuming that Mejia suffered a constitutional

---

[5]We note that the BIA could have reopened Mejia's deportation proceeding pursuant to 8 C.F.R § 3.2(a). This provision allows the BIA to reopen proceedings *sua sponte* and "at any time." 8 C.F.R. § 3.2(a). However, the BIA did not abuse its discretion in concluding that Mejia's arguments did not justify the reopening of his deportation proceedings, especially in light of the fact that Mejia did not challenge his final deportation order when it was originally entered but instead absconded from 1994 until 1997.

violation in his deportation proceedings, the application of the limitations period from 8 C.F.R. § 3.2(c)(2) does not raise constitutional concerns merely because it leaves Mejia without a remedy for vindicating his assumed constitutional injury.

D.      *Mejia's Fifth Amendment Ineffective-Assistance Claim*

Since Mejia's motion to reopen is clearly time barred, Mejia alternatively contends that his motion to reopen was untimely as a result of ineffective assistance of counsel in his deportation proceedings. Mejia contends that the same attorneys who advised him that his no-contest plea would not affect his immigration status also pursued a "frivolous legal position" in attempting to argue that Mejia's conviction could not be used as grounds for deportation. Thus, according to Mejia, if not for his counsels' deficient performance in his deportation proceedings, he would have sought to vacate his sentence in state court earlier and then promptly moved to reopen his deportation before the expiration of the limitations period. According to Mejia, his counsels' deficient performance in his deportation proceedings amounts to a violation of Mejia's Fifth Amendment right to due process.[6]

In order to evaluate Mejia's ineffective-assistance argument, it is important to reemphasize that Mejia is currently facing deportation for overstaying his student visa—not for his drug conviction. Mejia does not contest the validity of the basis for his deportation order. Therefore, Mejia's ineffective-assistance contentions necessarily focus on only his argument that, except for the cocaine conviction, he would have been eligible for suspension of deportation. As suspension of deportation is an extraordinary remedy over which the Attorney General possesses broad discretion, Mejia does not, and cannot, argue that he would have received suspension, and thus would not be facing deportation, if he had received effective assistance from his counsel during his initial deportation proceedings. Thus, the issue becomes whether deficient representation by counsel in deportation proceedings that renders an alien ineligible for suspension of deportation inflicts a constitutional injury.

---

[6]We note that, in addition to counsel who represented Mejia in his criminal proceedings, another attorney jointly appeared on Mejia's behalf in his deportation proceedings.

*E.*     *Ineffective Assistance in the Context of Eligibility for Suspension of Deportation*

Despite Mejia's arguments, the application of the limitations periods from 8 C.F.R. § 3.2(c)(2) to his motion to reopen did not result in a violation of Mejia's right to the effective assistance of counsel in his deportation proceedings.

Aliens enjoy the right to the effective assistance of counsel in deportation proceedings. *Barthold v. INS,* 517 F.2d 689, 690 (5th Cir.1975). Numerous courts have recognized that a deportation proceeding implicates an alien's liberty interest, which is protected by the Due Process Clause. *See, e.g., Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); *Kaoru Yamataya v. Fisher,* 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721, (1903); *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1037 n. 30 (5th Cir.1982). Therefore, the Due Process Clause—not the Sixth Amendment—gives rise to the right to effective assistance of counsel in deportation proceedings. *Id.* Thus, to establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it impinged the "fundamental fairness" of the hearing. *Id.* at 691. Other circuits have concluded that to establish the lack of fundamental fairness in a deportation proceeding, the alien must establish deficient representation and "prejudice" or "substantial prejudice" arising from this deficient representation. *See, e.g., Esposito v. INS,* 987 F.2d 108, 110 (2d. Cir.1993); *Mohsseni Behbahani v. INS,* 796 F.2d 249, 251 (9th Cir.1986); *Ogbemudia v. INS,* 988 F.2d 595, 598 (5th Cir.1993) (requiring a showing of "substantial prejudice").

However, the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest. *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). In *Dumschat,* the Supreme Court held that a state inmate does not enjoy a constitutionally protected liberty interest in having his or her sentence commuted, even where the state "consistently" commuted the sentences of inmates in "most" cases. *Dumschat,* 452 U.S. at 464-65, 101 S.Ct. 2460. The Court reasoned that "a constitutional entitlement cannot 'be created—as if by estoppel—merely

11

because a wholly and expressly discretionary state privilege has been granted generously in the past.' " *Id.* (quoting *Leis v. Flynt,* 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979)). Instead, according to the Court, "[i]n terms of the Due Process Clause, a ... felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Dumschat,* 452 U.S. at 465, 101 S.Ct. 2460.

This Court has applied *Dumschat* in the immigration context. *Garcia-Mir v. Meese,* 788 F.2d 1446 (11th Cir.1986). In *Garcia-Mir,* a group of Cuban aliens claimed a liberty interest in remaining "paroled"[7] into the United States while their immigration proceedings were pending. *Id.* at 1450-51. This Court acknowledged that actions by both Congress and the President had created a substantial expectation that the Cuban aliens would be allowed to remain on parole. *Id.* Nevertheless, as was the case in *Dumschat,* this Court in *Garcia-Mir* reasoned that, where a statute or regulation does not limit the executive's discretion to award relief, an expectancy of such relief does not give rise to a liberty interest protected by the Due Process Clause. *Id.* at 1452. Thus, relying on *Dumschat,* this Court concluded that the aliens did not enjoy a constitutionally protected liberty interest in "parole", which remained a purely discretionary form of relief. *Id.*

Likewise, the Seventh and Tenth Circuits have applied *Dumschat* to conclude that aliens do not enjoy constitutionally protected interests in either the adjustment of immigration status or "deferred action" by the INS. In *Achacoso-Sanchez v. INS,* 779 F.2d 1260, 1265 (7th Cir.1985), the Seventh Circuit held that aliens did not enjoy a protectable liberty interest in the reopening of deportation proceedings or the adjustment of immigration status. The Seventh Circuit specifically noted that an adjustment of status constituted "mercy" and that "[n]o one is entitled to mercy, and there are no standards by which judges may patrol its exercise."

---

[7]In the immigration context, "parole" refers to the practice of allowing aliens to enter the United States while their immigration proceedings are completed. *See, e.g., Jean v. Nelson,* 727 F.2d 957, 968 (11th Cir.1984).

*Id.* Likewise, the Tenth Circuit has concluded that "deferred action" by the INS does not give rise to a constitutionally protected liberty interest because the INS has "unfettered" discretion to determine who is entitled to deferred action. *Velasco-Gutierrez v. Crossland,* 732 F.2d 792, 797 (10th Cir.1984).

Very similar to the type of relief at issue in *Dumschat* and *Garcia-Mir,* "suspension of deportation" is an "act of grace" committed to the "unfettered discretion" of the Attorney General. *Jay v. Boyd,* 351 U.S. 345, 354, 76 S.Ct. 919, 100 L.Ed. 1242 (1956) (quoting *Escoe v. Zerbst,* 295 U.S. 490, 492, 55 S.Ct. 818, 79 L.Ed. 1566, (1935)). As such, even if an alien meets the statutory requirements for eligibility for suspension of deportation, the alien is not in any way entitled to this "exceptional remedy." *Id.; INS v. Jong Ha Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981); *Saiyid v. INS,* 132 F.3d 1380, 1384 (11th Cir.1998); *see also Gomez-Gomez v. INS,* 681 F.2d 1347 (11th Cir.1982) (reasoning that the Attorney General has the discretion to interpret narrowly the requirement of "extreme hardship"). In this sense, suspension of deportation is similar to an executive pardon. *Jay,* 351 U.S. at 355 n. 16, 76 S.Ct. 919. Indeed, the Supreme Court recently reaffirmed the analogy between suspension of deportation and an executive pardon by stating:

> We have described the Attorney General's suspension of deportation under a related and similarly phrased provision of the INA as " 'an act of grace' " which is accorded pursuant to her "unfettered discretion" and have quoted approvingly Judge Learned Hand's likening of that provision to " 'a judge's power to suspend the execution of a sentence, or the President's to pardon a convict.' "

*INS v. Yueh-Shaio Yang,* 519 U.S. 26, 29, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996) (citations omitted).

Accordingly, an attorney's deficient representation does not deprive an alien of due process if the deficient representation merely prevents the alien from being eligible for suspension of deportation. An alien's actual chances of receiving such discretionary relief are too speculative, and too far beyond the capability of judicial review, to conclude that the alien has actually suffered prejudice from being ineligible for suspension of deportation. Just as a convicted felon enjoys no constitutional right to a pardon and aliens have no due process rights to being "paroled", an alien has no constitutional right to suspension of deportation. Just as a court cannot review the inherently "subjective" judgments made by the executive in

13

deciding whether to commute a life sentence, this Court cannot predict the subjective and fact-intensive judgments that the Attorney General would make in deciding whether to grant extraordinary relief, such as the suspension of deportation. *Dumschat,* 452 U.S. at 464, 101 S.Ct. 2460. Accordingly, we cannot hold that being ineligible for suspension of deportation as a consequence of deficient representation constitutes a violation of due process. In other words, an alien has not been deprived of "fundamental fairness" simply by being ineligible for a purely discretionary "act of grace" like suspension of deportation. The alien cannot demonstrate prejudice, much less substantial prejudice, arising from the ineligibility for such an "act of grace" because no standards exist for a court to determine whether the executive would have granted the extraordinary relief anyway.[8]

In this case, assuming Mejia's representation during his initial deportation proceedings was deficient, this deficient representation did not deprive Mejia of the due process. The only consequence of his counsel's deficient representation that Mejia alleges is that he is ineligible for suspension. As mentioned above, Mejia

---

[8]We note that the Second and Fifth Circuits have recognized potential ineffective-assistance-of-counsel claims based on an attorney's failure to apply for a waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c) (1993). *Rabiu v. INS,* 41 F.3d 879 (2d Cir.1994); *Miranda-Lores v. INS,* 17 F.3d 84, 85 (5th Cir.1994). For a number reasons, *Rabiu* and *Miranda-Lores* do not aid Mejia. First, neither case discusses *Dumschat* or explains how the possibility of receiving such discretionary relief can implicate a constitutionally protected liberty interest entitled to due process protection. Second, both *Rabiu* and *Miranda-Lores* involved waiver of deportation which, unlike suspension of deportation, is available to only lawful permanent residents of the United States who have a greater expectancy of remaining in the United States than aliens, like Mejia, who are not lawful permanent residents. *Rabiu,* 41 F.3d at 881; *Miranda-Lores,* 17 F.3d at 85.

Third, even under *Rabiu* and *Miranda-Lores,* it does not appear that Mejia would be able to establish an ineffective-assistance claim. Under *Rabiu,* an alien must make a prima facie showing of eligibility for waiver of deportation and demonstrate a "strong showing" in support of the application for discretionary relief. *Rabiu,* 41 F.3d at 882. Similarly, under *Miranda-Lores,* the alien must establish "substantial prejudice" arising from the deficient performance, which requires that the alien make a prima facie showing of eligibility and demonstrate that he or she would receive the relief sought. *Miranda-Lores,* 17 F.3d at 85 (rejecting the ineffective assistance-claim because the alien failed to establish prejudice).

In this case, to be eligible for suspension, Mejia would have had to demonstrate "exceptional and extremely unusual hardship" if he is returned to Honduras. Mejia has not made a "strong showing" of an "exceptional ... hardship" and thus has not shown "prejudice"—let alone "substantial prejudice"—arising from his attorneys' deficient performance.

does not, and cannot, establish that, but for his counsel's deficient representation, he would not have been ordered deported. Moreover, Mejia has not even made a strong showing that he would have been able to demonstrate an extreme hardship arising from his return to Honduras. Therefore, Mejia has not demonstrated that the alleged ineffectiveness of his counsel caused any actual "prejudice" or "substantial prejudice", because Mejia has not, and could not, argue that he would have received the extraordinary relief of suspension were it not for his counsel's deficient performance.[9]

Because Mejia's petition for review does not allege any constitutional infirmity arising from the BIA's denial of his motion to reopen, the BIA did not err in denying Mejia's motion as untimely.

III.    *Conclusion*

For the foregoing reasons, the Board of Immigration Appeals' final order of deportation is AFFIRMED. The appeal from the district court's judgment dismissing the § 2241 petition is DISMISSED AS MOOT.

---

[9]We note that in the context of determining whether AEDPA § 440(d) applied retroactively, this Court observed that restrictions on eligibility for waiver of deportability "arguably attaches a new disability", which counseled against the retroactive application of AEDPA § 440(d). *Mayers v. INS,* 175 F.3d 1289 (11th Cir.1999). For three reasons, our statement in *Mayers* does not alter our conclusion that a due-process ineffective-assistance-of-counsel claim cannot be premised on being ineligible for suspension of deportation. First, in *Mayers* we specifically noted that because Congress did not intend a retroactive application of AEDPA § 440(d), we did not need to reach the issue of whether § 440(d) would have a retroactive effect. Thus, the statement in *Mayers* is dicta. Second, the argument, recognized in *Mayers,* that a statute has a retroactive effect by attaching a new disability is quite different from our holding in this case that such a disability, if it is even a disability, does not implicate a constitutionally protected liberty interest. Third, *Mayers* involved applications for waiver of deportation by permanent residents of the United States, who enjoy a heightened expectancy of remaining in the United States.