[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 13, 2005
THOMAS K. KAHN
CLERK

No. 05-11097
Non-Argument Calendar

_____

Agency No. A78-597-720

FERY MENDY DALIEN,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 13, 2005)

Before TJOFLAT, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Fery Mendy Dalien petitions for review of the Board of Immigration

Appeals's ("BIA") order denying his motion to reopen his removal proceedings. The BIA had previously affirmed the Immigration Judge's ("IJ") removal order which denied Dalien asylum and withholding of removal under the Immigration and Nationality Act ("INA") and under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Dalien claims the BIA's denial of his motion to reopen was an abuse of discretion and a violation of his due process rights because he complied with the requirements of In re Lozada, 19 I&N Dec. 637 (BIA 1988), aff'd, 857 F.2d 10, 14 (1st Cir. 1988), and he was prejudiced by his former attorney's failure to notify him of the BIA's decision to affirm the IJ's removal order. We DENY the petition.

## I. BACKGROUND

Dalien, a native and citizen of Haiti, entered the United States on or about 15 May 2000 as an alien who had not been admitted or paroled. On 13 December 2000, Dalien was issued a notice to appear in which he was charged as subject to removal. On 20 December 2000, Dalien filed an application for asylum. In his application, Dalien stated that he was seeking asylum because of his political opinion and his membership in a particular social group.

At his removal hearing on 16 August 2002, Dalien, through counsel, did not dispute his removability at his initial appearance before the IJ. He then testified that he lived in Gonaive, Haiti, with his wife, children, and uncle. In 1995,

according to Dalien, he joined a group called "Stand Up and Rise Up for Democracy," which his uncle had previously joined.

Dalien stated that on 26 April 2000 his uncle was killed by the local police for work on behalf of the mistreated poor. Nevertheless, Dalien also testified that on 19 March 2000—more than a month prior to the supposed killing—the police went looking for him at his home after he went on a radio station to denounce his uncle's killing. He alleged that the police beat his wife when she refused to tell them where he was. When his wife sent word to him not to return home, Dalien traveled to Port-au-Prince to hide. While there, he claims that he tried unsuccessfully to report his uncle's death to the city's police chief. From Port-au-Prince, Dalien later fled to the United States. Darien further testified at the hearing that the police in Gonaive have threatened to kill him if he returns to Haiti and that he was still waiting for documents which would support his claims.

In his oral decision, the IJ found the following: Dalien was not credible and, based on Dalien's testimony, none of his claims could be true. Dalien's testimony on the facts differed greatly from the claims he made in his asylum application with respect to the dates and the sequence of events, and his testimony was internally inconsistent. Even if the testimony were viewed as credible, Dalien failed to articulate any reasons for a grant of asylum and none of Dalien's allegations related to any of the five grounds on which asylum claims was based.

3

Dalien's fears regarding his uncle's alleged killing by the police failed to demonstrate that even an imputed political opinion existed. The only political activity that Dalien claimed was membership in a group that was a political organization, but he did not elaborate on the nature of the organization. Thus, based on Dalien's manner of testimony, his demeanor, and the contradictions between his application and his testimony, Dalien failed to establish either his eligibility for asylum or an entitlement to withholding of removal under the INA or CAT.

On 6 November 2003, the BIA affirmed the IJ's conclusion and stated the following:

> The [IJ's] adverse credibility determination is supported by the record. For example, [Dalien's] persecution claim is based on his allegations that he and his uncle were in the same political organization and that actions were taken against [Dalien] because he protested the death of his uncle at the hands of government forces in Haiti. However, [Dalien] testified that his uncle died on April 26, 2000, and that the police chief and others came to his home to punish him for actions taken in protest of that death on March 19, 2000. This inconsistency was pointed out to [Dalien] who failed to provide an adequate explanation for this discrepancy or to correct any misstatement when he was questioned specifically about it.

R1 at 28. No appeal was filed with our court.

On 9 December 2004, Dalien filed a motion both to reopen based on ineffective assistance of counsel and to stay removal. Dalien asserted that his former attorney was ineffective because he neglected to inform Dalien of the BIA's

4

decision dismissing his appeal, even though Dalien actively and consistently stayed in contact with him. Dalien explained that he did not learn that his former attorney had misled him until he met with his present attorney on 5 November 2004. He argued that his former attorney's misconduct deprived him of his statutory right to appeal to our court and was therefore prejudicial to his removal proceedings as well as his asylum and withholding of removal claims under the INA and CAT.

In its decision, the BIA denied Dalien's motion to reopen because it was filed 90 days after the date on which the final administrative decision was rendered and it did not fall within any of the exceptions to the time and number restrictions as set forth in 8 C.F.R. § 1003.2(c)(3). Additionally, the BIA did not find that sua sponte reopening was warranted. Even assuming that Dalien had met the Lozada requirements,[1] the BIA concluded that he failed to satisfy the heavy evidentiary burden relevant to reopening because he did not show any prejudice resulting from his former attorney's representation that would have affected the outcome of his case. The BIA noted that the former attorney had filed a timely appeal to the BIA on Dalien's behalf and a lengthy appellate brief in support of that appeal.

---

[1] The BIA has required that, when filing a motion to reopen based on a claim of ineffective assistance of counsel, the alien must: (1) submit an affidavit attesting to the relevant facts; (2) inform former counsel of the allegations and allow an opportunity to respond; and (3) if asserting that the prior counsel's handling of the case violated ethical or legal responsibilities, state whether a complaint has been filed with the appropriate disciplinary authorities, and, if not, the reasons for not doing so. Lozada, 19 I&N Dec. at 639.

In his petition to our court, Dalien argues that the refusal to reopen the case was an abuse of discretion by the BIA as well as a denial of due process of law. The government responds that the BIA's decision not to grant, sua sponte, an untimely motion to reopen is unreviewable.

## II. DISCUSSION

Pursuant to 8 C.F.R. § 1003.2(c)(2), a motion to reopen removal proceedings must be filed within 90 days of the "final administrative decision" by the BIA or before 30 September 1996, whichever is later. See 8 C.F.R. § 1003.2(c)(2); Mejia Rodriguez v. Reno, 178 F.3d 1139, 1145 (11th Cir. 1999) (construing 8 C.F.R. § 3.2, which is substantively identical to 8 C.F.R. § 1003.2). Moreover, we have explained that even assuming an alien has "suffered a constitutional violation in his deportation proceedings, the application of the limitations period from 8 C.F.R. § [1003.2(c)(2)] does not raise constitutional concerns merely because it leaves [an alien] without a remedy for vindicating his assumed constitutional injury." Mejia Rodriguez, 178 F.3d at 1145.

Additionally, the regulations provide for no exception based on grounds of an ineffective assistance of counsel, even if those grounds were discovered after the limitations period. The only exception to the 90-day time limit applicable to Dalien's case states that:

(3) . . . The time and numerical limitations set forth in paragraph

6

(c)(2) of this section shall not apply to a motion to reopen proceedings:

. . . .

(ii) To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing[.]

8 C.F.R. § 1003.2(c)(3)(ii).

The BIA issued its decision affirming the IJ's denial of Dalien's requests for relief on 6 November 2003, and Dalien filed a motion to reopen based on ineffective assistance of counsel and to stay removal on 9 December 2004, well beyond the 90-day time limit. Dalien's untimely application is not relieved by the one applicable exception, the presence of material evidence of changed country circumstance that could not have been previously discovered, since Dalien has not provided such evidence and has failed to argue that he is entitled to that exception in his initial brief to our court. See United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) (holding that a defendant abandons an issue by not raising it in his initial brief).

Even though Dalien's motion is untimely, the BIA has "very broad discretion" under 8 C.F.R. § 1003.2 to grant or deny his motion to reopen. See Anin v. Reno, 188 F.3d 1273, 1279 (11th Cir. 1999) (per curiam) (construing 8 C.F.R. § 3.2, which is substantively identical to 8 C.F.R. § 1003.2). However, we

7

have explained further that:

> The discretion accorded in this provision is so wide that "even if the party moving has made out a prima facie case for relief," the BIA can deny a motion to reopen a deportation order. No language in the provision requires the BIA to reopen a deportation proceeding under any set of particular circumstances. Instead, the provision merely provides the BIA the discretion to reopen immigration proceedings as it sees fit. Federal circuit courts consistently have interpreted the provision in this way. They have read 8 C.F.R. § 3.2(a) to give the BIA the discretion to reopen immigration proceedings in situations where federal courts lack the legal authority to mandate reopening.

Id. (citation omitted). We ultimately held that "[i]n short, the provision gives the BIA non-reviewable discretion." Id.; see also Harchenko v. INS, 379 F.3d 405, 410 (6th Cir. 2004) ("The decision whether to invoke sua sponte authority is committed to the unfettered discretion of the BIA."). Therefore, we will not review the BIA's decision not to invoke its sua sponte authority to grant Dalien's untimely motion to reopen. Accordingly, we dismiss Dalien's claim that the BIA abused its discretion, notwithstanding his claims of denial of due process. See Mejia Rodriguez, 178 F.3d at 1145.

## III. CONCLUSION

Upon review of the record, consideration of the parties' briefs, and for the above stated reasons, we deny Dalien's claim that BIA's refusal to reopen his case was an abuse of discretion as well as a denial of due process of law. **PETITION DENIED**.

8