[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 22, 2007
THOMAS K. KAHN
CLERK

No. 06-13657
Non-Argument Calendar
_____

BIA Nos.
A95-264-423 & A95-264-424

CLARA INES SANCHEZ-AYALA,
JAMES CASTRO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(January 22, 2007)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Clara Ines Sanchez-Ayala and her husband, James Castro, petition this court

for review of the Board of Immigration Appeals's ("BIA") decision denying their motion to reopen the BIA's affirmance of the Immigration Judge's ("IJ") order of removal. Sanchez-Ayala also argues that she established her prima facie eligibility for relief from removal. Because we conclude that we lack jurisdiction to review the merits of the asylum and withholding claims, we dismiss the petition in part. Because the BIA did not abuse its discretion in denying Sanchez-Ayala's motion to reopen, we deny the petition as to the motion to reopen.

I. Background

Sanchez-Ayala and her husband James Castro, Colombian citizens, were admitted to the United States on non-immigrant visas and remained beyond the expiration period. The INS issued notices to appear, charging them with removability. Sanchez-Ayala submitted an application for asylum on behalf of herself and Castro, stating that she sought asylum because she feared persecution from Revolutionary Armed Forces of Colombia ("FARC") based on her political opinion and membership in the Liberal Party. She further alleged that FARC twice had sent search parties to find her and that relocation was not an option. She later supplemented her application with an article showing that her supervisor had been killed by an unidentified party.

At the removal hearing, Sanchez-Ayala conceded removability and both she and her husband testified to the threats and persecution they allegedly suffered, as a

result of Sanchez-Ayala's work with the Social Advance Foundation and her participation in the Liberal Party, and Castro's work with the National Advanced Movement. Sanchez-Ayala testified to threatening phone calls she had received and warnings to leave the area. Castro testified to similar threats, although he admitted that he had not told his wife about the threats because he did not want to frighten her.

The government submitted the 2001 State Department Country Reports acknowledging FARC's presence throughout the country and its frequent attacks on civilians, teachers, and female political leaders. The IJ concluded that it was unlikely Sanchez-Ayala would have continued her work after receiving threats and that it was unbelievable that Castro would have found the threats serious enough to force him to leave the country and yet not tell his wife about them. Accordingly, the IJ found the testimonies lacked credibility, and that the two were not entitled to relief from removal. Sanchez-Ayala appealed to the BIA, and on February 7, 2006, the BIA dismissed the appeal.

On May 2, 2006, Sanchez-Ayala filed a motion to reopen arguing that she recently received previously unavailable documents from Colombia proving she and Castro would be killed if they returned to Colombia. She attached the following evidence: (1) a April 15, 2006, letter from a friend stating that Colombia remained unstable and it was not safe for them to return because of possible

3

persecution, (2) a March 18, 2006, letter from a psychologist who treated Sanchez-Ayala for post-traumatic stress, stating that Sanchez-Ayala should avoid returning to Colombia, (3) a March 16, 2006, letter from Sanchez-Ayala's cousin stating that groups had attacked farmers and invaded a town named Cordoba, (4) a September 2002 certificate detailing Sanchez-Ayala's work with human rights of indigenous communities, and Castro's work to educate people in religious programs, and (5) a letter from the Liberal Party certifying Sanchez-Ayala's and Castro's party membership and advising them to stay out of Colombia because party members were in danger.

The BIA denied Sanchez-Ayala's motion stating that the evidence she submitted was not likely to change the result in her case because the letters dated March 16 and 18 and April 15 did not present any new facts that were material to Sanchez-Ayala's application for relief, and the party letter, which was available at the time of the hearing, did not discuss specific threats. Sanchez-Ayala now petitions this court for review.

## II. The Petition for Review

### 1. Jurisdiction

We review subject matter jurisdiction de novo. Ortega v. Att'y Gen., 416 F.3d 1348, 1350 (11th Cir. 2005). A petition for judicial review of a BIA order must be filed no later than 30 days after the date of the final order of removal. 8

4

U.S.C. § 1252(b)(1). Time limits for judicial review are mandatory and jurisdictional and are not tolled by the filing of a motion to reopen. Dakane v. U.S. Atty. Gen., 399 F.3d 1269, 1272 n. 3 (11th Cir. 2005) (citation omitted).

Sanchez-Ayala's arguments that she was credible and entitled to relief from removal are barred by her failure to file a timely petition for review of those claims. The BIA dismissed her appeal on February 7, 2006, but Sanchez-Ayala did not petition this court for review until June 30, 2006. Thus, this petition for review was untimely as to her claims for relief from removal. 8 U.S.C. § 1252(b)(1). Moreover, Sanchez-Ayala's motion to reopen did not toll the time limit for her to file a petition for review of those claims. Dakane, 399 F.3d at 1272 n. 3. Therefore, our review is limited to the June 5, 2006, order denying the motion to reopen.

### 2. Motion to Reopen

Sanchez-Ayala asks this court to take judicial notice of a 2005 State Department Country Report on Colombia attached to her brief. She asserts that the party letter and Country Report provide evidence of her prima facie eligibility for relief and require that her claims be reopened.

We review the BIA's denial of a motion to reopen for abuse of discretion. Mejia Rodriguez v. Reno, 178 F.3d 1139, 1145 (11th Cir. 1999). Motions to reopen are disfavored in removal proceedings because "as a general matter, every

5

delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323, 112, S.Ct. 719, 116 L.Ed.2d 823 (1992). An applicant seeking to reopen proceedings bears a heavy burden. Al Najjar v. Ashcroft, 257 F.3d 1262, 1302-03 (11th Cir. 2001).

The regulations provide that a motion to reopen "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. 8 C.F.R. § 1003.2(c). The BIA may deny a motion to reopen if: (1) the movant did not establish a prima facie case for the underlying substantive relief; (2) the movant did not introduce previously unavailable material evidence; and (3) the movant, despite being eligible, is not entitled to the discretionary grant of relief. Al Najjar, 257 F.3d at 1302.

The BIA did not abuse its discretion in denying Sanchez-Ayala's motion to reopen. As an initial matter, we cannot consider the 2005 Country Report because it was not previously considered by the BIA. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (quotations and citation omitted). Moreover, in her appellate brief, Sanchez-Ayala only refers to the party letter as evidence in support of her motion to reopen. Thus, she has abandoned all arguments related to the other evidence she presented in her motion to reopen. Sepulveda v. U.S. Att'y Gen, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

6

The letter, however, was dated before the removal hearing and did not present any new information that was unavailable at the time of the hearing. The record contained a copy of the Country Reports indicating FARC's country-wide activities. Moreover, the letter only made references to general threats to members of the Liberal Party and was not specific to Sanchez-Ayala or Castro. Al Najjar, 257 F.3d at 1302.

Finally, even if the letter was considered, it would not compel a conclusion that the IJ erred because it would have no impact on the IJ's adverse credibility determination with respect to the denial of relief from removal. Therefore, Sanchez-Ayala could not establish her prima facie eligibility for relief, and the BIA did not abuse its discretion in denying the motion to reopen.

III. Conclusion

Based on the foregoing, we conclude that we lack jurisdiction to review the merits of the asylum and withholding claims, and DISMISS the petition in part. Because the BIA did not abuse its discretion in denying Sanchez-Ayala's motion to reopen, we DENY the petition as to the motion to reopen.