[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13954
Non-Argument Calendar
_____

BIA Nos. A96-085-205 & A96-085-206

GAMALIEL RODRIGUEZ-PARRA,
NANCY MORENO VILLARRAGA,
MANUEL JOSE RODRIGUEZ MORENO,
DENI ESPERANZA RODRIGUEZ-PARRA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(March 14, 2007)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Gamaliel Rodriguez-Parra ("Rodriguez-Parra"), his wife, Nancy Moreno Villarraga ("Nancy"), their son, Manuel Jose Rodriguez Moreno ("Manuel Jose"), and Rodriguez-Parra's sister, Deni Rodriguez-Parra ("Deni") seek review of the BIA's order denying their motion to reopen their removal proceedings. On appeal, petitioners argue that the BIA erred by considering their new evidence as cumulative and by failing to find that they were *prima facie* eligible for relief from removal.

## BACKGROUND

On May 6, 1999, Rodriguez-Parra, Nancy, and Manuel Jose, all natives and citizens of Colombia, were admitted to the United States as nonimmigrant visitors, who were not to remain in the country beyond November 5, 1999. On January 20, 2001, Deni, also a native and citizen of Colombia, was admitted to the United States as a nonimmigrant visitor, who was not to remain in the country beyond January 19, 2002.

On September 6, 2002, Rodriguez-Parra, on behalf of himself, his wife and his son, filed an application seeking asylum and withholding of removal based upon his political opinion under the Immigration and Nationality Act ("INA"), and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). He reported that his family had been active in the Liberal Party in Colombia and had participated in the

2

mayoral campaign for San Juan. He also reported that he was an independent merchant, his father owned a large farm close to their town, and his brother, also named Manuel, worked for the Administrative Department of Security ("DAS") with the Colombian government. He stated that, in June of 1998, members of the Revolutionary Armed Forces of Colombia ("FARC") threatened him and his family and told them to pay the FARC money to support its "revolutionary cause." He reported that, in September of 1998, two members of the FARC came to his store and threatened him. He also stated that, in March of 1999, members of the FARC began calling his house and store, threatening his family's lives. On October 22, 2002, the Department of Homeland Security issued them notices to appear, stating that they were deportable.

At a removal hearing, the IJ held that the petitioners were not eligible for asylum because they failed to apply for asylum within one year of arriving in the United States and had not shown any exceptional circumstances excusing their late filing. Thus, petitioners' claims were limited to withholding of removal and protection under CAT.

Rodriguez-Parra testified that his brother, Manuel, also was in the United States and seeking asylum. Rodriguez-Parra stated that he was seeking relief from removal on the basis that Manuel worked for the DAS and was persecuted by the FARC. The IJ continued the hearing so that the petitioners could attempt to have

3

Manuel testify.

At the next hearing, Manuel testified that he was seeking political asylum and had worked with the Colombia Security Department, serving "dignitaries, high functionaries of the government, like magistrates, [j]udges, [and] politicians." He also testified that he had seized arms and uniforms from the FARC and became known nationally for his work. He explained that he was afraid for his family, because when one works for the government, the FARC also threatens that person's siblings. Rodriguez-Parra testified that he was a member of the Liberal Party in Colombia, and that there was nowhere in Colombia where he would be safe. He also reported that his entire family was together on the family ranch when the FARC came and ordered them to pay money.

The IJ issued an order denying withholding of removal under the INA and relief under the CAT. In his decision, he stated that the petitioners had not established that they had been subjected to past persecution on account of their political opinion. Rather, he found that any persecution that had occurred was based on the family's refusal to pay the FARC extortion money, and there was no evidence that the extortion demands were based on the family's political activities. He further noted that being the family member of a former Colombian security officer could not afford the petitioners relief. Thus, the IJ found that the petitioners had not established that they were eligible for withholding of removal under the

4

INA. He also found that they were not entitled for relief under CAT because, to the extent that they feared being tortured, such torture would not be committed by the Colombian government.

The BIA adopted and affirmed the IJ's decision. The BIA stated that the petitioners had not filed their asylum applications within one year of their arrival into the United States, and because there were no extraordinary circumstances justifying the delay, they were not eligible for asylum. The BIA also stated that the petitioners' were ineligible for withholding of removal and CAT relief. The BIA found that the FARC had targeted the petitioners, not "to overcome a belief held or imputed" to them, but "because they appeared to have the financial means to pay the money to FARC," and, thus, they were not targeted on account of a protected ground.

The petitioners filed a motion to reopen their removal proceedings with the BIA. The motion included seven sworn statements, which the petitioners asserted contained relevant testimony regarding the dangers that they would face if they were returned to Colombia. The petitioners argued that these statements were not available at the time of their removal hearing and referred to events that occurred two years after their hearing.

The BIA denied the petitioners' motion to reopen their removal proceedings, noting that the new statements and affidavits were not sufficient to cure the late

filing of the asylum applications. The BIA also found that the evidence did not "demonstrate *prima facie* eligibility for a grant of withholding of removal or relief under the CAT in that [the evidence] is essentially cumulative" of the evidence that was presented to the IJ at the removal hearing. The BIA also noted that the evidence did not establish that it was more likely than not that the petitioners would be persecuted on account of a protected ground or tortured if they were returned to Colombia.

## STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for an abuse of discretion. *See Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1145 (11th Cir. 1999).

## DISCUSSION

An alien seeking withholding of removal under INA must show that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). An alien can meet this burden by showing either (1) "past persecution in his country based on a protected ground," or (2) "a future threat to his life or freedom on a protected ground in his country." *Id*.

A motion to reopen shall state "new facts" that would be proven at a new hearing, but "shall not be granted unless it appears to the Board that evidence

6

sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). "[T]here are at least three independent grounds upon which the [BIA] may deny a motion to reopen: (1) failure to establish a *prima facie* case; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Al Najjar v. U.S. Att'y Gen.*, 257 F.3d 1262, 1302 (11th Cir. 2001).

Here, the BIA did not abuse its discretion by denying the petitioners' motion to reopen. The new evidence did not establish that they were *prima facie* eligible for relief from removal, and the evidence was essentially cumulative of the evidence that was presented before the IJ. *See Al Najjar*, 257 F.3d at 1302.

The fact that the events recounted in the sworn statements occurred after the petitioners' removal hearing does not mean that the submitted evidence cannot be deemed cumulative of the evidence that was presented at the petitioners' removal hearing. Four of the seven sworn statements submitted by the petitioners merely state that the FARC is still looking for Rodriguez-Parra and his family. Two of the statements state that the FARC is looking for Rodriguez-Parra because of the debt that he owes the FARC. Only one sworn statement mentions that Rodriguez-Parra had to leave Columbia because of his membership with the Liberal Party, and it

7

appears that the contents of this statement could have been presented at the initial removal hearing. This evidence is essentially cumulative of the evidence presented before the IJ at the removal hearing. The petitioners had already submitted evidence to the IJ that Rodriguez-Parra was a member of the Liberal Party, that his family had been threatened by the FARC, and that they owed the FARC a "debt," which was tantamount to extortion money. We have made clear that refusing to pay extortion money to the FARC does not make one eligible for relief from removal and does not constitute a political opinion. *See Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004) (per curiam) (stating that the petitioner's refusal to pay the FARC 20 million pesos in extortion money did not establish the petitioner's "actual or imputed political opinion, much less any nexus between [the petitioner's] political opinion and the FARC's alleged persecution").

Accordingly, we find that the BIA did not abuse its discretion in finding that the new evidence was essentially cumulative of the evidence presented before the IJ and did not establish that the petitioners were *prima facie* eligible for relief from withholding of removal or relief under CAT. Therefore, we deny the petition for review.

**PETITION DENIED.**

8