[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10600

_____

ROSENDO PONCE FLORES,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A077-460-794

_____

Before WILLIAM PRYOR, Chief Judge, and HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

Rosendo Ponce Flores petitions for review of the Board of Immigration Appeals's ("BIA") order (1) affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal and dismissing his appeal, and (2) denying his motion to reopen and remand his removal proceedings. Ponce Flores, a citizen of Mexico, conceded removability. This petition is about only his application for cancellation of his removal. The main grounds for both his appeal to the BIA and his motion to reopen were Ponce Flores's claim that his counsel rendered ineffective assistance and denied him constitutional due process as to his cancellation-of-removal application.

After review and with the benefit of oral argument, we conclude as to the denial of Ponce Flores's application that: (1) cancellation of removal is a purely discretionary form of relief from removal; (2) Ponce Flores does not have a constitutionally protected liberty interest in that purely discretionary relief; and (3) therefore, Ponce Flores's constitutional due process claim is meritless, and we lack jurisdiction to entertain it under the Immigration and Nationality Act ("INA") § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). To the extent Ponce Flores is challenging the BIA's affirmance of the IJ's determination that Ponce Flores has not satisfied the hardship requirement for eligibility for cancellation of

removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1)(D), we also lack jurisdiction to review that factual finding.

As to Ponce Flores's ineffective assistance claims in his motion to reopen and remand, we conclude that: (1) Ponce Flores cannot establish a constitutional due process violation based on the BIA's denial of his motion to reopen because he does not have a protected liberty interest in either discretionary cancellation of removal or in the granting of a motion to reopen; (2) the BIA properly followed its legal precedent in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988); and (3) to the extent Ponce Flores's challenge to the denial of his motion to reopen rests on an argument that the BIA erred in ruling that he had not demonstrated that but for his counsel's deficiencies he would have proved the requisite hardship, we lack jurisdiction to entertain this claim.

## I.  BACKGROUND

### A.    Ponce Flores's Unlawful Entry

Ponce Flores, a native and citizen of Mexico, first entered the United States in either 1995 or 1996.  In 1999, Ponce Flores was arrested on charges of alien smuggling after he and two other aliens crossed the border in Laredo, Texas.  Ultimately, Ponce Flores pled guilty to unlawfully entering the United States, in violation of 8 U.S.C. § 1325.  Ponce Flores was removed to Mexico, but placed on five years' probation without supervision and with the special condition that he did not return or attempt to return to the United

States.   While in Mexico, Ponce Flores met and married Lizet Cornejo.

In 2004, Ponce Flores unlawfully re-entered the United States in Arizona without inspection.  He and his wife settled in Naples, Florida, where he works.

Ponce Flores and his wife have two daughters who were born in Naples and are U.S. citizens.  Born in 2004, their oldest daughter, Nancy, was diagnosed with autism spectrum disorder and expressive language disorder.  Born in 2012, their younger daughter, Stephanie, does not have special needs.

## B.    Initiation of Removal Proceedings in 2016

In October 2016, Ponce Flores was arrested for domestic battery of his wife, although charges were never filed.  He also had two traffic infractions for driving without a license and driving on a suspended license, but adjudication for both offenses was withheld.

In November 2016, the Department of Homeland Security served Ponce Flores with a notice to appear that charged him with removability on two grounds: (1) under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled; and (2) under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of a valid entry document at the time of admission.  At an initial hearing in November 2016, Ponce Flores conceded removability as charged.

Sometime in 2017, Lizet Cornejo and her daughters moved to Dallas, Texas.  Ponce Flores remained in Naples, Florida.  In Texas, his daughter Nancy began attending a school with a special program for autism.

## C.    Application for Cancellation of Removal in 2018

Later, Ponce Flores retained attorney Matus Varga to represent him.  In January 2018, attorney Varga filed Ponce Flores's application for cancellation of removal pursuant to INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).  That application claimed that Ponce Flores's removal would result in exceptional and extremely unusual hardship to his U.S.-citizen daughter Nancy because of her autism.

Attorney Varga filed multiple documents, such as: (1) documents about Nancy's medical and educational needs; (2) medical records and reports from her doctors; (3) records from her elementary school in Florida and her middle school in Texas indicating she received special education services; (4) Ponce Flores's tax returns for 2008 and 2011 to 2016; (5) notarized character letters from friends; and (6) a notarized letter from Lizet Cornejo, stating that Nancy did not understand her father's absence and suffered every day waiting for his return.

At his 2018 merits hearing, Ponce Flores testified that he remained in Florida for his job and flew to Texas once a month to see his family.  Ponce Flores admitted, however, that he was arrested for (1) alien smuggling and convicted of illegal reentry and

(2) domestic abuse but those charges were dismissed. He also admitted that his family had received government assistance for Nancy's therapy and health insurance. Contrary to his testimony, Ponce Flores's application had indicated that he was never arrested or convicted of an offense and that no member of his family, including his children, received public assistance.

### D.    IJ's Denial of Cancellation of Removal

In July 2018, the IJ's decision denied Ponce Flores's application for cancellation of removal. The IJ found that Ponce Flores's testimony lacked credibility due to (1) inconsistencies between his hearing testimony and the information in his application and (2) his failure to provide corroborating evidence for key aspects of his testimony.

The IJ denied Ponce Flores's application because he failed to establish three of the four statutory requirements for eligibility for discretionary cancellation of removal under 8 U.S.C. § 1229b(b)(1). Under § 1229b(b)(1), the Attorney General "may cancel removal" of an alien "who is inadmissible or deportable" if he satisfies these four requirements for eligibility: (1) he has been continuously present in the United States for at least ten years; (2) he has been a "person of good moral character" during that period; (3) he has not been convicted of any specified criminal offenses; *and* (4) his "removal would result in exceptional and extremely unusual hardship" to a qualifying relative who is a U.S. citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1)(A)-(D). The IJ found Ponce Flores failed to establish these three requirements for

eligibility: his continuous physical presence, his good moral character, or that his U.S.-citizen children will face exceptional and extremely unusual hardship as a result of his removal. Because the BIA focused on only the missing hardship requirement, we do too.

As to the hardship requirement for eligibility, the IJ acknowledged that Nancy's autism was serious and lifelong. The IJ concluded, however, that Ponce Flores failed to establish (1) Nancy was currently enrolled in a special school or program in Texas, (2) the kind of relationship Ponce Flores had with Nancy given that she lived in Texas, (3) what financial assistance he provided her, (4) whether Nancy received subsidized medical assistance, and (5) whether Lizet Cornejo could work or had other means of support. The IJ stressed that Ponce Flores had not submitted corroborating documentation, such as affidavits from his wife or others, transportation receipts, wire transfers, or bank statements.

### E.    BIA Appeal and Motion to Reopen Based on Ineffective Assistance

After retaining new counsel, Ponce Flores appealed the IJ's denial to the BIA. Ponce Flores's appeal challenged the IJ's findings that Ponce Flores (1) lacked credibility; (2) had not shown ten years of continuous physical presence; and (3) had not established the requisite hardship to his daughter Nancy. Ponce Flores contended that but for counsel's ineffective assistance, the IJ would not have made these findings.

Ponce Flores also moved to remand and reopen his cancellation-of-removal application due to attorney Varga's ineffective assistance.[1]   Ponce Flores contended that the inconsistencies and missing evidence were a direct result of Varga's failures to consult with Ponce Flores before completing and submitting his application, to communicate with and prepare Ponce Flores for his hearing, and to obtain and submit evidence to support Ponce Flores's application.

Ponce Flores attached to his motion new evidence, including (1) medical and educational reports and evaluations confirming Nancy's learning disabilities and her continued placement in special education programs in Texas; (2) records indicating Ponce Flores's financial support for and involvement with his family in Texas; (3) documents about his monthly flights to Dallas; (4) his declaration summarizing his agreement with Varga and Varga's deficient actions; (5) documents showing that Ponce Flores notified Varga of allegations of ineffective assistance and Varga responded to those allegations; and (6) evidence that Ponce Flores filed a complaint with the Attorney Grievance Committee in New York, where Varga was admitted to practice law.   Before the BIA, Ponce Flores argued: (1) his evidence complied with the BIA's procedural requirements for ineffective

---

[1] Ponce Flores styled his motion as a "Motion to Remand Proceedings Due To Ineffective Assistance of Counsel."  He requested that the BIA "remand" his case.

assistance claims set forth in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and (2) he had shown the requisite prejudice to reopen his application for cancellation of removal.

## F.    BIA Decision Affirming IJ and Denying Motion to Reopen

In January 2021, the BIA dismissed Ponce Flores's appeal of the IJ's decision and denied his motion to reopen and remand his application for cancellation of removal for further consideration.[2]

As to Ponce Flores's ineffective assistance claim, the BIA concluded that (1) he had "identified deficiencies in his representation by former attorneys," but (2) he had not shown prejudice "as a result of his former attorneys' alleged ineffectiveness so as to have affected the outcome of these proceedings." As to the IJ's hardship finding, the BIA "presum[ed] without deciding" that Ponce Flores was credible, considered his

---

[2] Although Ponce Flores styled his motion as a motion to remand, his motion relied on new evidence of both attorney Varga's ineffective assistance and Ponce Flores's eligibility for cancellation of removal and sought additional proceedings to consider the new eligibility evidence. The BIA treated Ponce Flores's motion as a "motion to reopen and remand." *See Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008) ("[I]f a motion to remand seeks to introduce evidence that has not previously been presented, it is generally treated as a motion to reopen under 8 C.F.R. § 1003.2(c)." (quotation marks omitted)); *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992) ("[W]here a motion to remand is really in the nature of a motion to reopen . . . , it must comply with the substantive requirements for such motions."). Further, where "a motion to remand seeks additional proceedings to introduce additional evidence, we apply the same standard of review as a motion to reopen." *Sow v. U.S. Att'y Gen.*, 949 F.3d 1312, 1317 (11th Cir. 2020).

new evidence, and reviewed de novo the IJ's hardship finding. After doing so, the BIA determined that Ponce Flores did not establish that his removal would result in exceptional and unusual hardship to his qualifying U.S.-citizen daughters. Ponce Flores thus had not shown his eligibility for cancellation of removal.

The BIA noted Ponce Flores's hearing testimony that he had lived apart from his family for over a year, that he supported them financially and visited monthly, and that his daughters would remain in the United States with their mother even if Ponce Flores was removed to Mexico. The BIA concluded Ponce Flores had "established that his eldest daughter suffers from severe autism," but stressed that Ponce Flores testified she was covered by state-funded health insurance in Texas. The BIA determined that "the record does not suggest she will lose that coverage or access to medication, treatment, or educational accommodations" upon Ponce Flores's removal.

The BIA also acknowledged that if Ponce Flores were removed, his daughters would likely suffer emotional hardship and would not have the "same standard of living in the United States." Even considering all the hardship evidence and factors cumulatively, the BIA determined that Ponce Flores had "not demonstrated the requisite exceptional and extremely unusual hardship" to his daughters that was needed to establish eligibility for cancellation of removal. The BIA denied his motion to reopen and remand. The BIA declined to "reach whether [Ponce Flores]

satisfied the other statutory requirements" for eligibility for cancellation of removal.

Ponce Flores timely filed a petition for review. In his petition, Ponce Flores argues that his former counsel's ineffective assistance caused the IJ's denial of his application for cancellation of removal and denied him constitutional due process. He also contends the BIA abused its discretion when it denied his motion to reopen and remand based on his former counsel's ineffective assistance.

## IV. BIA DECISION AFFIRMING IJ'S DENIAL OF CANCELLATION OF REMOVAL

### A.    Standard of Review

We review only the BIA's decision as the final agency decision except to the extent the BIA adopts the IJ's decision. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947-48 (11th Cir. 2010). We review questions of law de novo. *Id.* at 948. We review our own subject matter jurisdiction de novo. *Blanc v. U.S. Att'y Gen.*, 996 F.3d 1274, 1277 (11th Cir. 2021).

### B.    Jurisdiction

Congress has restricted our jurisdiction over certain immigration matters. Under 8 U.S.C. § 1252(a)(2)(B), this Court lacks jurisdiction "to review . . . any judgment regarding the granting of relief under section . . . 1229b" for cancellation of removal. INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i). This provision deprives us of jurisdiction "to review facts found as part

of discretionary-relief proceedings." *Patel v. Garland*, 596 U.S. ___, 142 S. Ct. 1614, 1627 (2022), *aff'g sub nom. Patel v. U.S. Att'y Gen.*, 971 F.3d 1258 (11th Cir. 2020) (en banc). This jurisdictional bar includes the "exceptional and extremely unusual hardship" factual finding under § 1229b(b)(1)(D). *Flores-Alonso v. U.S. Att'y Gen.*, 36 F.4th 1095, 1099-1100 (11th Cir. 2022) (explaining that we can only review "any legal error with respect to the application of the law to those facts established in the BIA's decision").

Notwithstanding § 1252(a)(2)(B)'s jurisdictional bar, we retain jurisdiction to consider constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D); *Patel*, 971 F.3d at 1262. However, "a party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction." *Patel*, 971 F.3d at 1272. "Such a claim must be colorable." *Id.* We have said that for a claim to be "colorable," it must be "non-frivolous," *see Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1197 (11th Cir. 2008), and "have some possible validity," *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 n.2 (11th Cir. 2007) (quotation marks omitted). "[W]here a constitutional claim has no merit[,] we do not have jurisdiction." *Arias*, 482 F.3d at 1284 (cleaned up).

## C.  Constitutional Due Process Claim Based on Ineffective Assistance

Here, Ponce Flores argues that but for his attorney Varga's deficient performance, he would have successfully carried his burden to prove his eligibility for cancellation of removal and therefore he was deprived of his Fifth Amendment right to due

process of law.  We lack jurisdiction to review Ponce Flores's constitutional due process claim because it is wholly without merit and therefore not colorable.

As we recognized in *Mejia Rodriguez*, when an alien retains counsel, an alien has a right to effective assistance of that counsel in the underlying removal proceedings.  *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999); *see also Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1221 (11th Cir. 2003).  This is because a removal "proceeding implicates an alien's liberty interest, which is protected by the Due Process Clause." *Mejia Rodriguez*, 178 F.3d at 1146.  This is *Mejia Rodriguez*'s first principle.

In contrast, "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest" and thus cannot deprive an alien of due process under the Fifth Amendment.  *Id.* at 1146-48.  This is *Mejia Rodriguez*'s second principle.

Specifically, in *Mejia Rodriguez*, this Court concluded that an alien is not deprived of due process where his counsel's deficient performance prevented the alien from being eligible for discretionary relief from deportation.  *Id.* at 1148.  The alien in *Mejia Rodriguez*, much like Ponce Flores here, did not contest his grounds for deportation.  *Id.* at 1146.  Instead, Mejia Rodriguez sought a suspension of his deportation, an earlier form of discretionary relief that was the precursor to the cancellation of

removal that Ponce Flores now seeks.[3]  *Id.* at 1145-46.  Mejia Rodriguez argued that but for his attorney's ineffective assistance during his deportation proceedings, "he would have been eligible for suspension of deportation."  *Id.* at 1146.

This Court concluded that Mejia Rodriguez was not deprived of due process under the Fifth Amendment.  *Id.* at 1148. The Court explained that because suspension of deportation was "an act of grace" committed to the "unfettered discretion" of the Attorney General, "even if an alien meets the statutory requirements for eligibility . . . , the alien [was] not in any way entitled to this exceptional remedy."  *Id.* at 1147 (quotation marks omitted).  In fact, the "alien's actual chances of receiving such discretionary relief are too speculative, and too far beyond the capability of judicial review, to conclude that the alien has actually suffered prejudice from being ineligible for suspension of deportation."  *Id.* at 1148 (stating "this Court cannot predict the subjective and fact-intensive judgments that the Attorney General

---

[3] Suspension of deportation had very similar eligibility requirements, including continuous physical presence in the United States for a period of years, good moral character, and an "exceptional and extremely unusual hardship" to a qualifying relative who was a U.S. citizen.  *Mejia Rodriguez*, 178 F.3d at 1141 n.2 (quotation marks omitted).  In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act repealed the provision authorizing suspension of deportation and replaced it with a provision authorizing cancellation of removal.  *Id.* at 1142 n.3; *see also* Pub. L. No. 104-208, div. C, tit. III, subtit. A, §§ 304, 308(b)(7), 110 Stat. 3009-575, 3009-616 (Sept. 30, 1996).

would make in deciding whether to grant extraordinary relief, such as the suspension of deportation").

Consequently, this Court in *Mejia Rodriguez* held that "an attorney's deficient representation does not deprive an alien of due process if the deficient representation merely prevents the alien from being eligible for suspension of deportation." *Id.* Since *Mejia Rodriguez*, this Court has continued to apply this general rule to other forms of discretionary relief, including cancellation of removal. *See, e.g.*, *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 548-49 (11th Cir. 2011) (holding absence of interpreter at hearing on applications for waiver of removability and cancellation of removal did not violate due process given alien had "no cognizable due process interest because those forms of relief are discretionary"); *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008) (holding alien's due process claim based on BIA's application of a former regulation could not prevail because he had "no constitutionally protected interest either in the granting of his motions [to reopen or for reconsideration] or in adjustment of status," all discretionary forms of relief); *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1223-24 (11th Cir. 2003) (holding alien's due process claim based on counsel's ineffective assistance in preparing application for waiver of excludability lacked merit because such waiver, "while guided by interpretive decisions, remains a purely discretionary form of relief"); *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-51 (11th Cir. 2001) (holding that alien's due process claim based on retroactive application of an amended statute that

effectively foreclosed cancellation of removal failed because he "ha[d] no constitutionally-protected right to discretionary relief from removal").

Here, Ponce Flores sought cancellation of removal, a form of relief from removal that, like its predecessor suspension of deportation, is purely discretionary. *See* INA § 240A(b); 8 U.S.C. § 1229b(b) ("The Attorney General *may* cancel removal . . . ." (emphasis added)); *Pereida v. Wilkinson*, 592 U.S. ___, 141 S. Ct. 754, 759 (2021) (explaining that while an alien facing removal may ask the Attorney General for cancellation, establishing the statutory requirements "still yields no guarantees; it only renders an alien *eligible* to have his removal order cancelled" and that the Attorney General has discretion "to grant or withhold that relief"). As such, under our precedent, Ponce Flores does not have a constitutionally protected liberty interest in obtaining cancellation of removal. *See Mejia Rodriguez*, 178 F.3d at 1148. Thus, Ponce Flores cannot show that his former counsel's deficient performance deprived him of liberty without due process.

Ponce Flores, nonetheless, argues that this Court has "consistently reviewed due process claims based on ineffective assistance of counsel in connection with discretionary applications," suggesting *Mejia Rodriguez* has been undermined. In this regard, Ponce Flores cites these four decisions: (1) *Dakane v. United States Attorney General*, 399 F.3d 1269 (11th Cir. 2005), (2) *Sow v. United States Attorney General*, 949 F.3d 1312 (11th Cir. 2020), (3) *Frech v. United States Attorney General*, 491 F.3d 1277

(11th Cir. 2007), and (4) *Ali v. United States Attorney General*, 643 F.3d 1324 (11th Cir. 2011).  We review each decision below.

For starters, none of these decisions held that an alien has a constitutionally protected liberty interest in purely discretionary relief from a removal order, such as cancellation of removal.  None of these found a constitutional due process violation.  Rather, to the extent the decisions review ineffective assistance claims, they did so in the context of a motion to reopen and based on an alien's statutory right to have counsel present at the alien's expense.

Let's begin with *Dakane*.  Our Court in *Dakane* stated: "The sole issue before us in this appeal is whether Dakane was required to demonstrate in his motion to reopen that his counsel's ineffective assistance prejudiced his removal proceedings."  399 F.3d at 1272.  Our holding in *Dakane* was that: (1) "a petitioner claiming ineffective assistance of counsel in a motion for reconsideration must also show prejudice"; (2) "[p]rejudice exists when the performance of counsel is so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different"; and (3) the BIA had not erred in determining Dakane failed to show prejudice.  *Id.* at 1274-75.

We recognize that *Dakane* in dicta also stated "[i]t is well established in this Circuit that an alien in civil deportation proceedings . . . has the constitutional right under the Fifth Amendment Due Process Clause right to a fundamentally fair hearing to *effective* assistance of counsel where counsel has been

obtained," citing *Gbaya v. United States Attorney General*, 342 F.3d 1219, 1221 (11th Cir. 2003). *Id.* at 1273.

*Dakane*, however, added a clarifying footnote six to its *Gbaya* cite that points out (1) Dakane is an inadmissible alien; and (2) "*inadmissible* aliens such as Dakane have traditionally not been able to claim constitutional due process protections in exclusion proceedings"; but (3) "they are ensured a fundamentally fair hearing through statutory protections provided for by Congress"; and (4) "Congress has long recognized the importance of counsel in immigration proceedings as evidenced by the statutory right to presence of counsel *under § 1362 of the INA*." *Id.* at 1273 n.6 (quotation marks omitted) (emphasis added). The *Dakane* Court then cited with approval *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 132 (3d Cir. 2001), in which the Third Circuit concluded that an excludable alien facing exclusion enjoys a *statutory* right under § 1362 to assistance of counsel at his expense and this is necessarily a right to effective assistance of that counsel. *Dakane*, 399 F.3d at 1273 n.6; *see also Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019) (citing *Gbaya* for the principle that "8 U.S.C. § 1362 provides that aliens have the right to retain private counsel in their removal proceedings" and thus "the right to effective assistance of counsel" so retained).

Our point is that *Dakane* does not undermine *Mejia Rodriguez*'s holding that aliens do not have a *constitutionally* protected liberty interest in discretionary relief from removal and do not have a constitutional due process right to effective assistance

21-10600                Opinion of the Court                19

of counsel in connection with discretionary applications. Instead, *Dakane* involved a statutory protection. While Ponce Flores elides this distinction, it is a critical one. Our Court has not permitted a *constitutional* due process claim based on the denial of discretionary relief like cancellation of removal. So Ponce Flores's argument that he can raise a constitutional due process claim based on ineffective assistance of counsel fails.[4]

Ponce Flores's citation to *Sow* fares no better. Sow presented himself at the Mexico border, seeking asylum for his fear of returning to Guinea. *Sow*, 949 F.3d at 1314. After a merits hearing where Sow was represented by counsel, the IJ denied his asylum application. *Id.* at 1314-16. The IJ stated that Sow "should, in fact, be given asylum based upon past persecution," if it were not for the evidentiary issues that Sow's attorney had allegedly

---

[4] Notably too, *Gbaya* cites *Mejia Rodriguez*, and *Gbaya* states only that, "It is well established that '[a]liens enjoy the right to the effective assistance of counsel in deportation proceedings.'" 342 F.3d at 1221 (quoting *Mejia Rodriguez*, 178 F.3d at 1146) (alteration in original). While both *Dakane* and *Gbaya* quote this first principle in *Mejia Rodriguez*, those decisions do not quote the equally well established second principle in *Mejia Rodriguez* about discretionary relief like cancellation of removal at issue here. Indeed, the quotes in both *Dakane* and *Gbaya* reference deportation, not discretionary relief from deportation.

In any event, *Dakane* and *Gbaya* involve applications for asylum, which is different from other forms of discretionary relief. We need not reach and thus do not opine on what constitutional due process rights a petitioner may have in connection with an asylum application.

disregarded. *Id.* at 1319. Sow, represented by new counsel, appealed to the BIA and filed a motion to remand based on ineffective counsel, which the BIA denied. *Id.* at 1316-17. In *Sow*, this Court reviewed only whether the BIA had abused its discretion in denying a motion to reopen based on ineffective assistance, concluding that it had. *See id.* at 1313 (quotation marks omitted).

Our Court in *Sow* did not need to speculate as to whether the outcome may have been different if counsel had performed adequately because "[t]he IJ's uniquely direct statement confirm[ed] that it would have." *Id.* at 1319. *Sow* did not address, or even mention, whether the alien had a *constitutionally* protected liberty interest in discretionary relief from removal.

Ponce Flores also cites *Ali*, which involved a discretionary waiver under INA § 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H). 643 F.3d at 1327. The alien claimed that his counsel's decision *to concede removability* was ineffective assistance. *Id.* at 1329-30. The ineffective assistance alleged in *Ali* was not in connection with his waiver application. *Ali* does not undermine *Mejia Rodriguez*'s holding that an alien has no liberty interest in a purely discretionary form of relief.

Ponce Flores's last case, *Frech*, is equally inapposite. The alien in *Frech* sought adjustment of status under § 202 of the Nicaraguan Adjustment and Central American Relief Act of 1997, a mandatory form of relief if the eligibility requirements are met. 491 F.3d at 1278-79 & n.1. *Frech* did not address either

discretionary relief from removal or a claim of ineffective assistance of counsel.

The alien in *Frech* challenged the IJ's denial of his motion for a change of venue from Miami to Houston. *Id.* at 1279. Frech's home, business, retained attorney, and witnesses were in Houston. *Id.* at 1279-80. After the IJ denied the venue motion, Frech's Texas counsel moved to withdraw and the IJ granted that motion. *Id.* at 1280. At the merits hearing in Miami, Frech appeared pro se, and the IJ denied adjustment of status and the relief Frech sought based on hardship to his family. *Id.* The BIA affirmed. *Id.*

In his petition for review, Frech argued the denial of his venue motion denied him constitutional due process because it deprived him of his right to be represented *by the counsel of his choice* and the ability to present evidence. *Id.* at 1281-82. Our Court stated that the deprivation of an alien's right to counsel of his choice in removal proceedings "would, *under certain circumstances*, constitute a due process violation." *Id.* at 1282 (emphasis added). Yet our Court skipped over what those circumstances might be and whether they were met. This Court denied Frech's petition because he "ha[d] not shown that he was substantially prejudiced by any due process violation." *Id.* (explaining Frech had not shown the dismissal of his attorney in Texas "was related to the location of the hearing" or that he had "sought a continuance thereafter for the purpose of obtaining another attorney" in Florida).

22                    Opinion of the Court                    21-10600

Nothing in *Frech* (or *Dakane*, *Sow*, or *Ali*) undermines *Mejia Rodriguez* and our subsequent decisions squarely holding that an alien does not have a constitutionally protected liberty interest in purely discretionary forms of relief like cancellation of removal.[5]

Because Ponce Flores's constitutional due process claim— even if based on ineffective assistance—is meritless, it is not colorable.    Accordingly, we lack jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review the BIA's denial of Ponce Flores's application for cancellation of removal.    *See Acosta Alvarez*, 524 F.3d at 1197; *Arias*, 482 F.3d at 1284 n.2.[6]

D.    Hardship Requirement

Although not raised as a separate argument, Ponce Flores's petition does assert that the BIA erred in finding that, even assuming he was credible, "he did not establish the requisite hardship to his daughters."    Ponce Flores claims "the BIA failed to consider all hardship factors in the aggregate," which he contends violated *Matter of Monreal-Aguinaga*, 23 I & N. Dec. 56, 63-64 (BIA 2001).

---

[5] While we take time to review these cases cited by Ponce Flores, we point out *Mejia Rodriguez* was decided in 1999, and these decisions came later. Under our prior panel precedent rule, we are bound by *Mejia Rodriguez*. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

[6] Later on, we discuss Ponce Flores's motion to reopen filed before the BIA and his ineffective assistance of counsel claim under the BIA's precedent in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988).

To the extent Ponce Flores is challenging the BIA's decision affirming the IJ's hardship determination, we lack jurisdiction to review this issue. Under our binding precedent, this Court lacks jurisdiction to review the denial of cancellation of removal grounded on the fact-based finding that the alien failed to show exceptional and extremely unusual hardship to a qualifying relative. *See Patel*, 971 F.3d at 1279 ("[A]ll eligibility determinations for the five enumerated categories of discretionary relief are barred from review."); *Flores-Alonso*, 36 F.4th at 1100.

Further, in *Flores-Alonso*, this Court held that an argument like the one Ponce Flores makes here—that the BIA failed to consider all the hardship factors in the aggregate "in the way that *Matter of Monreal-Aguinaga* instructs it to do, even though it cited the proper legal standard"—does not present a legal question this Court has jurisdiction to review under 8 U.S.C. § 1252(a)(2)(D). 36 F.4th at 1100. "As long as the BIA cites and proceeds to apply the proper legal standard, . . . we cannot make legal error out of an inherently subjective determination of whether an applicant's relatives will experience exceptional and extremely unusual hardship." *Id.*

In Ponce Flores's appeal, the BIA cited *Matter of Monreal-Aguinaga*, among other BIA precedents pertaining to the showing of hardship, and explicitly stated it had "consider[ed] all of the hardship factors in this case cumulatively, including the hardships that may result from the medical, economic, and emotional factors." Hence, as to the hardship requirement for eligibility,

Ponce Flores has not raised a legal question that we have jurisdiction to review.[7]

## V.  BIA'S DECISION DENYING MOTION TO REOPEN CANCELLATION-OF-REMOVAL APPLICATION

Ponce Flores argues that the BIA abused its discretion in denying his motion to reopen and remand based on attorney Varga's ineffective assistance before the IJ.  Ponce Flores contends the BIA (1) failed to follow its own precedent in *Lozada*, and (2) erred in determining he had not shown prejudice as a result of that ineffective assistance.   Ponce Flores also seeks to revisit his constitutional due process claims and the BIA's hardship determination in denying his motion to reopen.

"The decision to grant or deny a motion to reopen . . . is within the discretion of the BIA, 8 C.F.R. § 1003.2(a), and we have recognized that this discretion is very broad."  *Scheerer*, 513 F.3d at 1253 (quotation marks omitted).  "The BIA may deny a motion

---

[7] Ponce Flores also argues the IJ erred in finding he did not establish continuous physical presence because the deficient notice to appear did not trigger the "stop-time rule" and the IJ's adverse credibility finding is not supported by substantial evidence.  The BIA, however, explicitly declined to reach these other grounds that the IJ found warranted denial of Ponce Flores's application, and "[w]e do not consider issues that were not reached by the BIA." *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  In addition, because Ponce Flores's failure to satisfy the requisite hardship element is alone sufficient to deny his application, we also need not address these other grounds.

to reopen, if the alien fails to establish a prima facie case" of eligibility for relief. *Butalova v. U.S. Att'y Gen.*, 768 F.3d 1179, 1182 (11th Cir. 2014). The movant "bears a heavy burden" in showing that reopening is warranted because "motions to reopen are disfavored, especially in removal proceedings." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009).

## A.    Standard of Review

We review the BIA's denial of a motion to reopen removal proceedings for an abuse of discretion. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). "Our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." *Id.* "The BIA abuses its discretion when it misapplies the law in reaching its decision." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). We review de novo our own subject matter jurisdiction. *Blanc*, 996 F.3d at 1277.

## B.    Jurisdiction

"Generally, we have jurisdiction to review the denial of a motion to reopen." *Butalova*, 768 F.3d at 1182.

However, when direct review of the underlying order is barred by one of the INA's jurisdiction-stripping provisions, we also lack "jurisdiction to entertain an attack on that order mounted through" a motion to reopen. *Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1262 (11th Cir. 2003) (concluding 8 U.S.C. § 1252(a)(2)(C)'s criminal-alien bar deprived this Court of jurisdiction to review the denial of a motion to reopen based on a state court's *nunc pro tunc*

order modifying the alien's sentence); *see also Butalova*, 768 F.3d at 1183-84 (concluding 8 U.S.C. § 1252(a)(2)(B)(ii) deprived this Court of jurisdiction to review the BIA's denial of a motion to reopen seeking discretionary relief as a battered spouse under 8 U.S.C. § 1154(a)(1)(A)(iii)); *Guzman-Munoz v. U.S. Att'y Gen.*, 733 F.3d 1311, 1313-14 (11th Cir. 2013) (concluding 8 U.S.C. § 1252(a)(2)(B)(i) deprived this Court of jurisdiction to review the BIA's denial of a motion to reopen seeking discretionary special cancellation of removal as the battered spouse of a Cuban national under 8 U.S.C. § 1229b(b)(2)).

*Guzman-Munoz* is particularly instructive because it addressed a motion to reopen proceedings in which the alien, like Ponce Flores, unsuccessfully sought discretionary cancellation of removal under § 1229b(b) and then filed a motion to reopen with the BIA. 733 F.3d at 1312. The alien in *Guzman-Munoz* sought special cancellation of removal as a battered spouse under § 1229b(b)(2), rather than regular cancellation of removal under § 1229b(b)(1). *Id.* As in Ponce Flores's case, review of the underlying order denying Guzman-Munoz's application was barred by § 1252(a)(2)(B)(i). *See id.* at 1313. Under these circumstances, this Court concluded it also lacked jurisdiction to review the BIA's denial of Guzman-Munoz's motion to reopen her cancellation of removal proceedings and dismissed her petition. *Id.* at 1314.

In doing so, we stressed that § 1252(a)(2)(B)(i) strips this Court of jurisdiction to review "*judgments*" regarding the granting

of relief under section . . . 1229b.'" *Id.* at 1313 (emphasis added) (quoting 8 U.S.C. § 1252(a)(2)(B)(i)).    We reasoned that "§ 1252(a)(2)(B)(i) does not speak in terms of final orders, prima facie cases, or motions to reopen. Instead, § 1252(a)(2)(B)(i) simply bars review of discretionary agency *judgments* granting or denying relief under § 1229b." *Id.* at 1313-14 (emphasis added). To hold otherwise would permit an "end-run" whereby petitioners "would be able to obtain appellate-court jurisdiction simply by raising § 1229b arguments on motions to reopen." *Id.* at 1314.

Finally, although we noted that we "retain[ed] jurisdiction to review constitutional challenges" under § 1252(a)(2)(D), Guzman-Munoz had "raise[d] no such challenge." *Id.* Applying these principles, we examine the extent to which we have jurisdiction to consider Ponce Flores's challenge to the denial of his motion to reopen based on ineffective assistance.

### C.    Constitutional Due Process Claims

To the extent Ponce Flores contends the BIA abused its discretion in denying his motion to reopen because his counsel's ineffective assistance deprived him of constitutional due process under the Fifth Amendment, we lack jurisdiction to review this claim mounted through a motion to reopen for the same reasons we cannot review this claim directly. Because Ponce Flores has no protected liberty interest in discretionary cancellation of removal, his Fifth Amendment due process claim is not colorable for purposes of 8 U.S.C. § 1252(a)(2)(D). *See supra* Section IV.C. To hold otherwise would permit an end-run around the jurisdiction-

stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(i) and (a)(2)(D), which together bar us from reviewing any judgment regarding the granting of cancellation of removal under § 1229b(b), except where a colorable constitutional claim is presented. *See Guzman-Munoz*, 733 F.3d at 1314.

To the extent Ponce Flores contends the BIA's own denial of his motion to reopen itself deprived him of constitutional due process, that claim also lacks merit. An alien cannot establish a Fifth Amendment due process violation based on the BIA's denial of a motion to reopen because an alien in those circumstances has no constitutionally protected liberty interest in the granting of a motion to reopen. *See Scheerer*, 513 F.3d at 1253 ("Because Scheerer has no constitutionally protected interest either in the granting of his motions [to reopen and to reconsider] or in adjustment of status, he cannot establish a due process violation based on the BIA's decisions."); *Butalova*, 768 F.3d at 1183 ("An alien, however, does not have a constitutionally protected interest in discretionary forms of relief, such as the granting of a motion to reopen.").

Having determined Ponce Flores's ineffective assistance claim raises no colorable due process violation that we can review, we consider whether his ineffective assistance claim otherwise presents a reviewable legal question.

### D.    Ineffective Assistance Claim Under *Matter of Lozada*

Examination of our jurisdiction over an ineffective assistance claim requires some background about that type of claim.  Under § 1362, Ponce Flores has a right to counsel at his own expense and therefore is entitled to effective assistance of the counsel he retains.  *Dakane*, 399 F.3d at 1273 (citing 8 U.S.C. § 1362).[8]  The BIA permits an alien to seek to reopen removal proceedings based on a claim of ineffective assistance of his retained counsel.  *Id.*; *Matter of Lozada*, 19 I. & N. Dec. at 638-39. To do so, the BIA requires the alien to meet three procedural requirements and show prejudice resulting from counsel's deficiencies.  *Matter of Lozada*, 19 I. & N. Dec. at 639-40; *Gbaya*, 342 F.3d at 1223 ("The BIA does not abuse its discretion by filtering ineffective assistance of counsel claims through the screening requirements of *Lozada . . . .*").

Procedurally, *Lozada* requires that an ineffective assistance claim be supported by: (1) an affidavit attesting to the relevant facts about the agreement with former counsel about actions to be taken and former counsel's representations in that regard; (2) evidence that former counsel was informed of the allegations and provided an opportunity to respond and of former counsel's response, if any; and (3) evidence as to whether the alien filed a complaint against

---

[8] While *Dakane* involved an inadmissible alien, § 1362 does not distinguish between inadmissible and removable aliens.  *See* 8 U.S.C. § 1326.

former counsel with the appropriate disciplinary authorities. 19 I. & N. Dec. at 639.

"[I]n addition to substantial, if not exact, compliance with the procedural requirements of *Lozada*, a petitioner claiming ineffective assistance of counsel . . . must also show prejudice." *Dakane*, 399 F.3d at 1274 & n.7 (citing *Matter of Lozada*, 19 I. & N. Dec. at 640). Under *Lozada*'s prejudice component, "[p]rejudice exists when the performance of counsel is so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Id.* at 1274.

With this background, our threshold question is whether we have jurisdiction to review the BIA's denial of Ponce Flores's ineffective assistance claim. Ponce Flores argues he raises these two reviewable legal questions: (1) the BIA erred in suggesting he failed to comply with *Lozada*'s procedural requirements, when in fact he fully complied; and (2) the BIA erred in its *Lozada* prejudice determination.

As to the procedural requirements, the BIA cited the proper legal standard for ineffective assistance claims from its own *Lozada*. Although the proper legal standard is a reviewable legal question, we cannot make a legal error out of a BIA factual determination that the evidence did or did not satisfy *Lozada*'s three procedural requirements. *See Alvarez Acosta*, 524 F.3d at 1196-97. Whether in fact Ponce Flores's particular evidence was sufficient to satisfy or substantially comply with the BIA's *Lozada* procedural

requirements does not present a legal question that this Court has jurisdiction to review under 8 U.S.C. § 1252(a)(2)(D).

Alternatively, and in any event, the BIA did not find that Ponce Flores failed to comply with *Lozada*'s procedural requirements.  The BIA instead concluded that "even if [it] were to find [Ponce Flores] had complied with the *Lozada* requirements, [Ponce Flores] must also establish he suffered prejudice as a result of his former attorneys' alleged ineffectiveness."  The BIA then found that Ponce Flores had "identified deficiencies in his representation by former attorneys," but concluded he had not shown he suffered prejudice as a result.  In short, there is no merit to Ponce Flores's claim that the BIA committed legal error with respect to *Lozada*'s three procedural requirements.

As for the BIA's prejudice determination, the BIA presumed Ponce Flores's credibility and reviewed all the evidence, including his new evidence, de novo.  The BIA then determined he "ha[d] not demonstrated that but for the deficiency in his prior counsels' representation, he would have met his burden of proof to demonstrate the requisite hardship to his qualifying relative children."  As a result, Ponce Flores had not demonstrated he "suffered prejudice as a result of his former attorneys' alleged ineffectiveness so as to have affected the outcome of these proceedings."

In other words, the BIA's analysis of *Lozada*'s prejudice prong was commensurate with its de novo hardship determination.  Stated another way, the BIA reviewed de novo all

of Ponce Flores's new evidence and made its own determination that this new evidence still would not satisfy Ponce Flores's burden to show the requisite hardship to his daughters under § 1229b(b)(1)(D).

As already discussed, under *Flores-Alonso* we lack jurisdiction to review directly the BIA's hardship determination under § 1229b(b)(1)(D). 36 F.4th at 1099-1100. Therefore, we are also barred by § 1252(a)(2)(B)(i) from reviewing a challenge to the BIA's hardship determination made in denying a motion to reopen. *See Guzman-Munoz*, 733 F.3d at 1314. The question then becomes, do we have jurisdiction to review the BIA's prejudice determination under *Lozada* when it turned on the BIA's de novo hardship determination based on Ponce Flores's new evidence?

Of course, whether the BIA applied the correct prejudice standard is a legal question we retain jurisdiction to review under § 1252(a)(2)(D). In this case, there is no dispute that the BIA correctly stated the prejudice standard from *Lozada*. The BIA accepted all of Ponce Flores's evidence and determined it would not have affected "the outcome of these proceedings." Because the BIA applied the proper legal standards, it did not abuse its discretion. *See Ferreira*, 714 F.3d at 1243.

Ponce Flores's argument isolates the BIA's finding that he failed to meet his burden of proof as to hardship. He claims the BIA abused its discretion because his new evidence established the requisite hardship and that the outcome of his proceedings would have been different. The first problem for Ponce Flores is that his

"argument that the BIA abused its discretion by failing to weigh an alien's factual scenario presents a 'garden-variety abuse of discretion argument—which can be made by virtually *every* alien subject to a final removal order—[and] does not amount to a legal question under § 1252(a)(2)(D).'" *Butalova*, 768 F.3d at 1183 (alteration in original) (quoting *Alvarez Acosta*, 524 F.3d at 1196-97).

The second problem for Ponce Flores's particular case is that whether an alien carries his burden to show the requisite hardship under § 1229b(b)(1)(D) is a factual finding that § 1252(a)(2)(B)(i) deprives us of jurisdiction to review. *See Flores-Alonso*, 36 F.4th at 1099-1100. And, because the BIA's denial of Ponce Flores's ineffective assistance claim raised in his motion to reopen rested solely upon, and was commensurate with, the BIA's fact-based hardship determination, we conclude § 1252(a)(2)(B)(i) deprives us of jurisdiction to review the BIA's prejudice determination under the circumstances of this case.

Ponce Flores relies on *Sow*, where the alien's motion to remand was based on ineffective assistance, and we reviewed the BIA's prejudice determination and reversed. *See Sow*, 949 F.3d at 1318-19 (concluding "Sow established that counsel's deficiencies prejudiced his case" and that "the unique facts of Sow's case present the rare situation where we must find that the BIA was arbitrary and capricious in exercising its discretion" in denying his motion to remand).

*Sow* does not help Ponce Flores because there was no § 1229b(b)(1) hardship determination at the heart of the BIA's ruling in that case. The relief Sow sought was asylum, which is specifically exempted from the jurisdiction-stripping provision at issue here. *Id.* at 1314. Specifically, § 1252(a)(2)(B) deprives courts of jurisdiction to review "any other decision or action" by the Attorney General that the INA specifies is in the Attorney General's discretion "other than the granting of relief under section 1158(a)," which is the asylum statute. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). There was no jurisdiction-stripping provision in *Sow* to bar this Court's review of the BIA's prejudice determination.

In sum, to the extent Ponce Flores's challenge to the denial of his motion to reopen rests on an argument that the BIA erred in ruling that he had not demonstrated that but for his counsel's deficient performance, he would have proved the requisite hardship under § 1229b(b)(1)(D), we lack jurisdiction to entertain this claim under § 1252(a)(2)(B)(i).

**PETITION DISMISSED IN PART AND DENIED IN PART.**