[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10115

_____

ALMA ARACELY CASTANEDA-MARTINEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A089-099-071

_____

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Alma Aracely Castaneda-Martinez petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's denial of her claim for withholding of removal. We previously dismissed Castaneda-Martinez's petition for lack of jurisdiction due to her failure to exhaust administrative remedies with the BIA. *Castaneda-Martinez v. U.S. Att'y Gen.* ("*Castaneda-Martinez I*"), No. 21-10115, 2021 WL 5298894, at *3 (11th Cir. Nov. 15, 2021). The United States Supreme Court granted Castaneda-Martinez's petition for writ of *certiorari*, vacated our prior opinion, and remanded for further consideration in light of *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). *Castaneda-Martinez v. Garland*, 143 S. Ct. 2558 (2023).

## I.

Castaneda-Martinez, a Honduran citizen, was previously removed from the United States in 2008. She reentered the United States in May 2016 and was detained by the Department of Homeland Security and received a reasonable fear interview, after which an asylum officer found that she had a reasonable fear of persecution should she return to Honduras. She was later placed in withholding-only proceedings before an immigration judge.

Castaneda-Martinez applied for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A), and for relief under the Convention Against Torture ("CAT"), asserting persecution on account of membership in a particular social group. In a statement attached

to her application, she asserted that she left Honduras because her life was threatened by a gang known as Los Chentes. According to Castaneda-Martinez, the threats began after she witnessed gang members murder her uncle because he refused to continue paying a "tax" to the gang. She contacted the police, despite being warned by the gang members not to do so. But when Castaneda-Martinez, accompanied by her cousin and grandmother, arrived at the police station, no one was there for her to report the murder. During the next several days, she received threatening text messages and heard from neighbors that those gang members intended to kill her as well. She moved to a friend's house in a nearby village, but the gang members found her after five months. While Castaneda-Martinez escaped, her friend's daughter was raped by the gang members. She moved to another friend's house, but after people in her home village learned where she was staying and reported that Los Chentes was still looking for her, her friend informed her she could no longer stay with her. Castaneda-Martinez then fled to the United States.

At the hearing on her application, Castaneda-Martinez provided testimony similar to her personal statement and added that her cousin had been murdered after they attempted to report the uncle's murder to the police. Through counsel, she articulated three particular social groups: (1) a person who "witnessed firsthand the murder of her uncle by the Los Chentes [and] took steps to file a report"; (2) a person "persecuted by Los Chentes on account of her familial relationship," i.e., her uncle; and (3) a person "persecuted by the Los Chentes gang because she is related to a

business owner who refused to pay a local tax." She also argued that her opposition to the gang was sufficient to establish her membership in those proposed social groups because it existed independently of her persecution and was the reason the gang targeted her.

The immigration judge issued an oral decision denying Castaneda-Martinez's withholding of removal and CAT claims. While finding her testimony credible, the immigration judge found that she had "not posited a cognizable particular social group definition or demonstrated any type of nexus between [the three] claimed groups and any type of harm she fears in Honduras." As to her first proposed group, the immigration judge held it was not cognizable because it only contained Castaneda-Martinez and was not "socially distinct within society for any reason." In analyzing the first group, the immigration judge noted that Castaneda-Martinez had never filed a police report against the gang members. As to her second group, the immigration judge found that she had not shown the gang was motivated by animus against her family, in particular noting that Castaneda-Martinez's grandmother still safely lived in Honduras and that her parents and siblings continued to live in Honduras safely. As to the third proposed group, the judge found it insufficient to show any type of social distinction within society. And the immigration judge found that it was clear that Castaneda-Martinez "simply feared being the victim of crime and in the matters for a general . . . criminal strife," but that "generalized fear of harm or violence without more does not support"

a withholding of removal claim.[1]  Thus, because Castaneda-Martinez "failed to demonstrate any type of nexus due to one of the five annuity grounds such as that of membership to their social group definition," the immigration judge found her application for withholding of removal must fail.  The immigration judge therefore ordered Castaneda-Martinez removed to Honduras.

Castaneda-Martinez appealed to the BIA.  Her notice of appeal argued that the immigration judge erred in determining that her proposed social groups were not cognizable as well as in finding that she could live elsewhere in Honduras without risk of persecution by the gang.  She stated that she "was targeted because of her relationship with her uncle and because she was connected to activities involving seeking justice with the prosecutor, which resulted in the assassination of [her] cousin and the gang's attempt to kill [her]."

In her brief to the BIA, Castaneda-Martinez argued that the immigration judge erroneously limited her first proposed social group "to the facts solely specific to [her]—a single person—rather than to the large group consisting of 'individuals who witness gang crimes and take steps to report them.'"  She also argued that the fact that she failed to file a report was material because succeeding in filing a report was not required for her proposed group to be recognized.  Of that, Castaneda-Martinez contended that she and her cousin "were targeted and threatened because they went to the

---

[1] The immigration judge also denied Castaneda-Martinez's CAT claim, but she does not make any argument challenging that denial on appeal.

state's office to file a complaint—even though no complaint was filed." And she concluded that she had "demonstrated that the social group defined as 'witnesses of gang crimes who took steps (attempted to file) a police report/complaint,' was a cognizable particular social group." Her brief, however, did not challenge the immigration judge's rejection of her two other proposed social groups. And she did not challenge the immigration judge's finding that she "simply feared being the victim of crime and in the matters for a general . . . criminal strife," which was a "generalized fear of harm or violence" that could not support a withholding of removal claim—i.e., that there was a nexus between the persecution she suffered and a protected ground. *See Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437–38 (11th Cir. 2004). Instead, she merely argued that her attempt to file a police report "was one of the central reasons, if not the main reason, why she was persecuted."

On December 23, 2020, the BIA adopted and affirmed the immigration judge's decision, as there was no clear error in the judge's findings of fact concerning the actual motive of the gang members in Honduras—that "gang members were not motivated to harm the applicant on account of a protected ground." Rather, the BIA explained that the events "appear[ed] to concern a personal dispute or vendetta for a crime committed by gang members, which does not amount to past persecution on account of a protected ground." Castaneda-Martinez's petition timely followed.

We dismissed Castaneda-Martinez's petition without reaching the merits, concluding that we lacked jurisdiction because she

failed to exhaust administrative remedies as to her withholding of removal claim. *Castaneda-Martinez I*, 2021 WL 5298894, at *3. The Supreme Court granted Castaneda-Martinez's subsequent petition for writ of *certiorari* and remanded the case for further consideration consistent with the Court's intervening decision in *Santos-Zacaria*. *See Castaneda-Martinez v. Garland*, 143 S. Ct. at 2559.

## II.

We review *de novo* questions of law and our subject matter jurisdiction. *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1217 (11th Cir. 2023).

## III.

Section 1252(d)(1) of the Immigration and Nationality Act ("INA") provides, in relevant part, that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). "A petitioner has not exhausted a claim unless [s]he has both raised the 'core issue' before the BIA and also set out any discrete arguments [s]he relies on in support of that claim." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016) (quoting *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008)).

We previously held that we lacked jurisdiction to consider a claim raised in a petition for review unless the petitioner had exhausted her administrative remedies with respect to those claims, even if the BIA *sua sponte* addressed those claims, pursuant to INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). *Amaya-Artunduaga v. U.S. Att'y*

*Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006).  But in *Santos-Zacaria*, the Supreme Court clarified that the obligation to exhaust administrative remedies is a claims-processing rule, not a jurisdictional requirement, and is subject to waiver and forfeiture.  *Santos-Zacaria*, 598 U.S. at 419–24.  "Unlike jurisdictional rules, mandatory claim-processing rules may be forfeited 'if the party asserting the rule waits too long to raise the point.'"  *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005)).  "If a party 'properly raises them,' however, they are 'unalterable.'"[2]  *Id.* (alteration adopted) (quoting *Eberhart*, 546 U.S. at 15, 19).

Section 1252(d)(1) speaks in mandatory language, providing that we may "*only*" review a final order of removal "*if* . . . the alien has exhausted all administrative remedies."  8 U.S.C. § 1252(d)(1) (emphasis added).  And the Attorney General in this case has argued that Castaneda-Martinez failed to exhaust administrative remedies because she "did not . . . challenge the immigration judge's nexus finding on appeal to the [BIA]."  Because the Attorney General properly raised this claims-processing rule, it is

---

[2] This is consistent with our precedent in analogous circumstances.  In *United States v. Lopez*, for example, we determined that the time limits in Federal Rule of Appellate Procedure 4(b) for filing a notice of appeal in a criminal case are not jurisdictional, but that the government had not forfeited its objection to the timeliness of the appellant's notice of appeal and that the appeal thus should be dismissed because the notice of appeal was untimely.  562 F.3d 1309, 1311–14 (11th Cir. 2009).

"unalterable," and we must enforce it. *See Manrique*, 581 U.S. at 121; *Eberhart*, 546 U.S. at 15, 19.

We conclude, as we did in our prior opinion, that Castaneda-Martinez failed to properly exhaust her administrative remedies before the BIA.  The immigration judge, in denying Castaneda-Martinez's claims for relief, rejected each of her three proposed particular social groups and found that she "had not posited a cognizable particular social group definition or demonstrated any type of nexus between these claimed groups and any type of harm she fears in Honduras."  Instead, the immigration judge determined that Castaneda-Martinez "simply fear[ed] being the victim of crime in an atmosphere of general criminal strife . . . [which] without more does not establish any type of fear or harm due to [a] statutory protected ground."  And in her brief to the BIA, Castaneda-Martinez challenged neither the immigration judge's determination that she had failed to demonstrate a nexus between her proposed social groups and the harm she feared in Honduras, nor the immigration judge's finding that Castaneda-Martinez showed only a generalized fear of harm or violence.  Her brief, rather, only disputed the immigration judge's determinations that her "group consisted of only one member" and that she was "not able to meet the witness social group simply because she did not actually [file a police report]."  The closest Castaneda-Martinez came to raising a nexus argument to the BIA is one passing reference in which she posits that her attempt to file a police report "was one of the central reasons, if not the main reason, why she was persecuted."  But this undeveloped passing reference to the "reason" for her claimed

persecution is insufficient for exhaustion purposes.  *See Jeune*, 810 F.3d at 800 ("[T]o exhaust a claim before the BIA, it is not enough that the petitioner has merely identified an issue to that body."). Castaneda-Martinez therefore failed to exhaust her claim because she did not raise and develop her "core issue" before the BIA.  *See id.* (requiring the petitioner to both raise the "core issue" and "set out any discrete arguments" she relies on); *c.f. Montano Cisneros*, 514 F.3d at 1228 n.3 (rejecting the government's failure-to-exhaust argument where the petitioners had "always argued the core issue now on appeal" in their administrative proceedings).  Accordingly, we may not review the final order of removal.  *See* § 1252(d)(1).

## IV.

For these reasons, we dismiss Castaneda-Martinez's petition for review for failure to exhaust administrative remedies.

**PETITION DISMISSED.**