[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11825

Non-Argument Calendar

_____

GRACIELA HERNANDEZ-RIVERA,
ALVARO TREJO ROJO,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-697-986

_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Graciela Hernandez-Rivera and Alvaro Trejo Rojo, a married couple, jointly petition for review of the Board of Immigration Appeals' final order affirming the immigration judge's denial of their applications for cancellation of removal and for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). After careful consideration, we dismiss their petition in part and deny it in part.

**I.**

Hernandez-Rivera, a citizen of Mexico, entered the United States without inspection when she was four years old. Trejo Rojo, a citizen of Mexico, entered the United States without inspection when he was 11 years old. Hernandez-Rivera and Trejo Rojo began dating when they were teenagers and later married. They have four children who were born in the United States and are United States citizens.

In 2016, Hernandez-Rivera applied for asylum, withholding of removal, and CAT protection. She claimed that she feared future harm and mistreatment if she returned to Mexico. Trejo Rojo proceeded as a rider on his wife's application. *See* 8 U.S.C. § 1158(b)(3)(A).

About a year after Hernandez-Rivera filed the application, the Department of Homeland Security served her and her husband with notices to appear. They were charged as removable because they were noncitizens present in the United States without having been admitted or paroled. *See id.* § 1182(a)(6)(A)(i).

At an initial hearing in the removal proceeding, Hernandez-Rivera and Trejo Rojo stated that they planned to apply for cancellation of removal. *See id.* § 1229b(b)(1). The immigration judge mentioned the pending application for asylum, withholding of removal, and CAT relief and asked whether they still intended to pursue that application. Counsel for Hernandez-Rivera and Trejo Rojo responded that they would keep that application as "an alternative" but stated that he did not think they would need to address it. AR at 114.[1]

Hernandez-Rivera and Trejo Rojo then applied for cancellation of removal.[2] They asserted that their removal would result in exceptional and extremely unusual hardship to their four children, who were United States citizens, and to Hernandez-Rivera's parents, who were lawful permanent residents. Regarding hardship, they asserted that in Mexico their children would be unable to receive the school support and medical care they needed. They submitted medical records and school records documenting the

---

[1] "AR" refers to the administrative record.

[2] Although Hernandez-Rivera and Trejo Rojo submitted separate applications for cancellation of removal, they jointly submitted all other filings related to these applications.

hardships their children faced. These documents showed that their oldest child, L., had profound hearing loss in one ear and needed significant medical care. Even with the medical care she received, she still had trouble hearing. Because of her hearing loss, L. at times experienced difficulties in school and needed special assistance.

These documents also showed that the couple's three sons had health problems. Their son, G., was diagnosed with a developmental speech delay. He had difficulty in school, particularly in the areas of reading and writing. At school, he had an individual education plan and received speech therapy services. In addition, all three of their sons—G., S., and M.—suffered from repeated respiratory infections, asthma, and/or bronchitis.

They also presented evidence about country conditions to show that their children would face hardships in Mexico. They presented reports that detailed the difficulties in obtaining health care in Mexico, the limited special education programs available there, and the challenges that children born in the United States faced when relocated to Mexico after their parents' removal.

In the applications for cancellation of removal, Hernandez-Rivera and Trejo Rojo were asked whether they had ever been "arrested . . . [or] convicted . . . for an act involving a felony [or] misdemeanor." *Id.* at 1354. Hernandez-Rivera responded that she had no arrests or convictions. Trejo Rojo answered that he had previously been arrested and agreed to provide records related to the arrests.

The record for their applications for cancellation of removal included documents showing that on several occasions Hernandez-Rivera reported that Trejo Rojo had attacked or threatened her.[3] In 2009, she filed a petition seeking an injunction for protection against domestic violence in Florida state court. In the petition, she described an incident in which Trejo Rojo accused her of having an affair and then choked her. She stated that the couple's children witnessed this incident. She also described two earlier incidents. She stated that in August 2008 Trejo Rojo choked her, and in December 2008 he threatened to kill her. She also said that he had used, or threatened to use, against her weapons such as guns or knives. She requested an injunction requiring Trejo Rojo to stay more than 500 feet away from her. She signed the petition and attested that each statement in it was "true and correct." *Id*. at 1815. She also indicated her understanding that the statements were "being made under penalty of perjury." *Id*.

Hernandez-Rivera reported another domestic violence incident in 2011. Based on this report, Trejo Rojo was arrested and charged in Florida state court with simple domestic battery. The prosecutor later dropped the charge against him.

Hernandez-Rivera reported a final domestic violence incident in 2014. In a sworn statement to police, she stated that while

---

[3] The record also reflected that both Hernandez-Rivera and Trejo Rojo had received a significant number of traffic citations. Hernandez-Rivera was cited several times for driving with an expired license. Trejo Rojo was cited several times for driving without a license.

she was on a phone call Trejo Rojo became suspicious that she was cheating. He grabbed the phone out of her hands. He held her with one hand and used his other hand to choke her. After Hernandez-Rivera or one of the children hit him, he finally let her go. After the incident, Hernandez-Rivera called the police. As part of their investigation, police interviewed one of the couple's children. The child reported witnessing the fight and said that Trejo Rojo had hit and choked Hernandez-Rivera. Officers arrested Trejo Rojo and charged him with domestic battery by strangulation and simple domestic battery. After he admitted to committing the offense of simple domestic battery and completed a pretrial diversion program that required him to participate in parenting classes and therapy, the charges against him were dismissed.

Hernandez-Rivera and Trejo Rojo submitted materials to the immigration judge about the domestic violence incidents. Hernandez-Rivera's sister and mother wrote letters addressing the circumstances that led Hernandez-Rivera to seek a domestic violence injunction in 2009. The letters explained that when Hernandez-Rivera and Trejo Rojo decided to separate, Hernandez-Rivera asked to move back in with her parents. But her mother would allow her to return home only if she obtained a restraining order against Trejo Rojo. Hernandez-Rivera, accompanied by her sister, then went to a victim services office in a local courthouse to seek help. Hernandez-Rivera's sister claimed that at the office an employee helped Hernandez-Rivera "write a very exaggerated statement" to make Trejo Rojo look like "an absolutely terrifying person." *Id.* at 1721. The employee told Hernandez-Rivera that "if she did not

write this statement in [this] way . . . , [she] would not be granted the restraining order." *Id.*

The immigration judge held a hearing on the merits of Hernandez-Rivera and Trejo Rojo's applications. At the outset, the immigration judge noted that there were pending applications for cancellation of removal as well as for asylum, withholding of removal, and CAT relief. He asked whether they intended to proceed on the applications for asylum, withholding of removal, and CAT relief. Their attorney initially responded, "not with regard to the wife." *Id.* at 132. But the attorney indicated that they were still proceeding on the application for asylum, withholding of removal, and CAT relief for Trejo Rojo, describing it as "kind of a backup relief." *Id.* at 133. When the court pointed out that Trejo Rojo was a rider on his wife's application, their attorney indicated that he would "like to keep them together and . . . proceed together." *Id.* at 135. Hernandez-Rivera and Trejo Rojo raised no objection to the court addressing each of their applications in a single proceeding.

Hernandez-Rivera was the first witness to testify at the merits hearing. She testified that she had continuously lived in the United States for 24 years and no longer had immediate family in Mexico. She explained that her children were United States citizens who spoke no Spanish. She stated that if she and Trejo Rojo were removed from the United States, the children would come with them to Mexico. She then described the difficulties that her children would face in Mexico. And she testified about the difficulties

her father, who was a lawful permanent resident, would face if she were removed from the United States.

Hernandez-Rivera also testified about the domestic violence incidents. She began by discussing her 2009 petition for an injunction for protection against domestic violence. She stated that she filed the petition after Trejo Rojo had cheated on her. When the couple separated, she wanted to live with her parents, but her mother would allow her to move home only if she obtained a restraining order against Trejo Rojo. Hernandez-Ramirez admitted that, to obtain the restraining order, she submitted a sworn statement in which she stated that Trejo Rojo had physically attacked her, he was dangerous, and she was scared for her life. She testified before the immigration judge that these statements were not true; she had made them up to secure the restraining order.

She also testified about the 2011 domestic violence incident. She stated that the incident began when she saw a message on Trejo Rojo's phone from another woman. When she saw the message, Trejo Rojo was asleep. She slapped him. He woke up and responded by slapping her in the face. At the immigration hearing, she testified that when Trejo Rojo slapped her, he used an open fist. But she had told police that he punched her in the face with a closed fist.

Hernandez-Rivera also described the 2014 incident. She testified that the incident began when Trejo Rojo saw her messaging someone on her phone. He assumed that she was communicating with a man, and the couple began to argue. She told the

immigration judge that during the argument Trejo Rojo put his hand close to her neck but denied being choked. She also admitted that she pushed Trejo Rojo. She testified that when she reported to police that Trejo Rojo had choked her, she was angry and embellished to make the incident sound "more dramatic." *Id.* at 206.

Hernandez-Rivera testified that Trejo Rojo had changed since these incidents. After the 2014 arrest, he attended parenting classes and participated in individual therapy. She stated that he had learned to manage his anger.

During her testimony, Hernandez-Rivera was asked whether the children had ever witnessed violence in the home. She answered that they had not.

When Hernandez-Rivera finished testifying, the time set aside for the hearing was almost up. The immigration judge directed that the hearing would resume on another day so that Trejo Rojo and other witnesses could testify.

Several days later, the merits hearing resumed. At the start of the hearing, Trejo Rojo submitted his own application for asylum, withholding of removal, and CAT relief. He then testified. He described why his removal to Mexico would cause hardship to his children.

He addressed Hernandez-Rivera's reports of domestic violence. He denied that any physical abuse had occurred in 2009. He stated that Hernandez-Rivera had included untrue information in the petition for a restraining order so that her mother would allow her to move back home. When asked on direct examination about

the two earlier incidents of domestic violence that Hernandez-Rivera described in the petition, he denied that those incidents had occurred.

He also testified about the 2011 incident. He stated that the incident began when Hernandez-Rivera looked at his phone, saw that he was communicating with another woman, and became upset. While he was asleep, she slapped him. He testified that upon waking up to a slap, he was disoriented and reacted by hitting her in the face.

He then discussed the 2014 incident. He stated that he became suspicious after seeing a text message on Hernandez-Rivera's phone from a number he did not recognize. The couple began to argue and "pushed each other." *Id.* at 327. He admitted that during the altercation he placed his hands on her chest but denied trying to choke or strangle her. He stated that after his arrest, a no-contact order was imposed, which barred him from seeing Hernandez-Rivera or their children for several months. He stated that after the incident, he completed anger management and parenting classes and participated in individual counseling sessions. He testified that these programs helped him learn to control his anger.

After the direct examination, the government began to cross examine Trejo Rojo. The cross examination was interrupted because another witness, Hernandez-Rivera's father, needed to testify through an interpreter, and the interpreter had limited availability. Hernandez-Rivera's father testified about how she cared for him and how he would suffer if she were removed to Mexico.

After Hernandez-Rivera's father finished testifying, the immigration judge asked whether they could "conclude [Trejo Rojo] on cross, take a proffer with regard to remaining witnesses, get closing, and conclude today?" *Id.* at 444. The couple's attorney responded that he was "comfortable with that." *Id.* But he clarified that his preference was to continue presenting witnesses until he was sure that the immigration judge would grant the applications for cancellation of removal. The government then completed its cross-examination of Trejo Rojo.

When Trejo Rojo completed his testimony, the time allotted for the hearing had nearly expired. The immigration judge suggested that Hernandez-Rivera and Trejo Rojo submit proffers from their additional witnesses who had not yet testified. Their attorney again indicated that he preferred to have these witnesses testify but agreed to submit proffers. After the hearing, the immigration judge left the record open so that Hernandez-Rivera and Trejo Rojo could "submit whatever additional documents [they] wish[ed] to submit. *Id.* at 477. They did not submit any materials.

The immigration judge issued a written decision denying the applications for cancellation of removal. He found that Hernandez-Rivera's and Trejo Rojo's testimony was not credible. After comparing Hernandez-Rivera's statements when reporting the domestic violence incidents to her testimony at the hearing, the immigration judge concluded that she either lied at the time of the incidents or "she lied under oath before this court while testifying." *Id.* at 63. Because the immigration judge did "not know which

version to believe," he found her testimony not credible. *Id*. He also found that Trejo Rojo testified in an "evasive, inconsistent manner." *Id*. at 64. He identified several instances when Trejo Rojo's testimony at the hearing about the domestic violence incidents conflicted with statements that Trejo Rojo or Hernandez-Rivera made at the time of the incidents.

After making these credibility determinations, the immigration judge assessed Hernandez-Rivera's and Trejo Rojo's eligibility for cancellation of removal. To be eligible for cancellation of removal, the immigration judge explained, they had to show, among other things, that their removal would result in an exceptional and extremely unusual hardship to a qualifying family member. He concluded that they had not satisfied this requirement because they had not established that their family members would experience an exceptional, extremely unusual hardship if they were removed.

The immigration judge further determined that even if Hernandez-Rivera and Trejo Rojo were eligible for cancellation of removal, he would not exercise his discretion to grant them relief. He acknowledged that there was some evidence to support an exercise of discretion in their favor because they had lived in the United States for a long time, they had extensive family ties to the United States, they had presented evidence of their good character, and their removal would cause hardship to their family members.

The immigration judge determined that there were other factors that weighed against an exercise of discretion, however. He found that Trejo Rojo had engaged in "substantial criminal

conduct," which included the domestic violence incidents and repeatedly driving without a license. *Id.* at 71. Another negative factor was that both Hernandez-Rivera and Trejo Rojo offered "evasive, inconsistent, and less-than-candid testimony before the court regarding the domestic violence incidents." *Id.* at 73. Because "the negative factors in this case offset the positive evidence," the immigration judge determined that Hernandez-Rivera and Trejo Rojo did "not merit cancellation of removal as a discretionary matter." *Id.* at 74. He thus denied their applications for cancellation of removal.

The immigration judge then turned to the applications for asylum, withholding of removal, and CAT relief. He determined that Hernandez-Rivera and Trejo Rojo had failed to "pursue, testify, or argue[] in support of" these applications. *Id.* Because they did not even attempt to carry their burdens for these claims, the immigration judge denied these applications as well.

Hernandez-Rivera and Trejo Rojo appealed to the Board of Immigration Appeals. They challenged the immigration judge's credibility determinations as well as his finding that they were ineligible for cancellation of removal because they failed to satisfy the hardship standard. They also argued that the immigration judge erred by failing to consider their applications "individually, independently, and perhaps separately." *Id.* at 18. They further claimed that they were denied due process because the immigration judge was biased against them and barred them from calling witnesses to support their applications.

The Board affirmed the immigration judge's decision and dismissed the appeal. The Board determined that the immigration judge's credibility determinations were "supported by the record" and "not clearly erroneous." *Id.* at 4. It then concluded that for the cancellation of removal applications Hernandez-Rivera and Trejo Rojo "did not meet their burden to establish that a favorable exercise of discretion is warranted." *Id.* at 5. Given this conclusion, the Board declined to address whether the immigration judge erred in concluding that they were not statutorily eligible for cancellation of removal.

The Board also rejected Hernandez-Rivera and Trejo Rojo's argument that the immigration judge erred in considering their applications for cancellation of removal together. It noted that they "did not object to [the] process below" and their "counsel specifically agreed to have [their] cases heard together." *Id.*

The Board also affirmed the immigration judge's decision denying asylum, withholding of removal, and CAT relief. It explained that Hernandez-Rivera and Trejo Rojo "did not present any testimony or argument to support [these] claims." *Id.* at 4.

The Board rejected the due process claims, too. It concluded that the immigration judge was not biased.

It also determined that the immigration judge had not improperly precluded Hernandez-Rivera and Trejo Rojo from presenting evidence to support their applications. It noted that the immigration judge held a merits hearing that extended over two days and gave them an opportunity to submit additional documents

after the hearing. Given the "totality of the record," the Board concluded that the immigration judge had done nothing improper. *Id.* at 6. Further, the due process claim failed because there was no prejudice. The Board noted that Hernandez-Rivera and Trejo Rojo had not advanced any argument about what additional testimony they would have presented and how it would have impacted the case.

This is Hernandez-Rivera and Trejo Rojo's petition for review.

## II.

We review only the decision of the Board, except to the extent that it expressly adopted the immigration judge's decision. *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019).

We review *de novo* questions of our own jurisdiction. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016), *overruled on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 415 n.2, 419–23 (2023). "Legal and constitutional questions receive *de novo* review." *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013).

## III.

In their petition for review, Hernandez-Rivera and Trejo Rojo raise challenges to the Board's denial of their applications for

cancellation of removal as well as their applications for withholding of removal and CAT relief.[4]

We begin by briefly reviewing when a noncitizen is entitled to each type of relief. Congress has authorized the Attorney General to grant cancellation of removal to certain noncitizens who are removable. *See* 8 U.S.C. § 1229b(b)(1). To be eligible for cancellation of removal, a noncitizen must establish that (1) she has been continuously physically present in the United States for at least ten years, (2) she has been a "person of good moral character" while present in the United States, (3) she has not been convicted of any specified criminal offenses, and (4) her "removal would result in exceptional and extremely unusual hardship" to a qualifying relative who is a United States citizen or a lawful permanent resident. *Id.*; *see Pereida v. Wilkinson*, 592 U.S. 224, 227–28 (2021). When a noncitizen is eligible, the Attorney General then has discretion "to grant or withhold" cancellation of removal, "limited by Congress's command that no more than 4,000 removal orders may be cancelled each year." *Pereida*, 592 U.S. at 228.

A noncitizen ordered removed also may seek withholding of removal. Congress has directed that a noncitizen may not be removed to a country where her "life or freedom would be threatened . . . because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). To be entitled to withholding of removal, the noncitizen must

---

[4] Although Hernandez-Rivera and Trejo Rojo also sought asylum, they do not raise in their petition any issue related to the denial of asylum.

show that she "would more likely than not be persecuted on account of a protected ground." *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1375 (11th Cir. 2021) (internal quotation marks omitted).

A noncitizen ordered removed also may seek relief under the CAT. To obtain CAT relief, she must show that she will "more likely than not" be tortured if returned to the designated country of removal. 8 C.F.R. § 1208.16(c)(2). "In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 1208.18(a)(5). Additionally, the noncitizen must show that the torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

In their petition for review, Hernandez-Rivera and Trejo Rojo argue first that the agency erred in denying their applications for cancellation of removal because substantial evidence did not support this decision. Second, they assert that the immigration judge denied them due process when reviewing their applications for cancellation of removal as well as their applications for withholding of removal and CAT relief. We address each issue in turn.

## A.

We begin with Hernandez-Rivera and Trejo Rojo's argument that substantial evidence did not support the Board's decision to deny their applications for cancellation of removal. Specifically, they argue substantial evidence did not support the immigration

judge's credibility determinations or his finding that their removal would not result in exceptional hardship to their relatives.

We must assess whether we have jurisdiction to review these issues. "Congress has sharply circumscribed judicial review of the discretionary-relief process." *Patel v. Garland*, 596 U.S. 328, 332 (2022). It has stripped courts of jurisdiction to review any "judgment regarding the grant of relief" on an application for cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i). But "[t]his bar has an important qualification." *Patel*, 596 U.S. at 333. Congress has restored jurisdiction for courts to consider "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

Recently, in *Wilkinson v. Garland*, the Supreme Court addressed federal courts' jurisdiction to review decisions denying cancellation of removal. *See* 601 U.S. 209 (2024). The petitioner in that case sought judicial review of the decision denying his application for cancellation of removal. *Id.* at 216. The Court explained that "[t]he application of a statutory legal standard (like the exceptional and extremely unusual hardship standard) to an established set of facts" is a "mixed question of law and fact" that is reviewable under § 1252(a)(2)(D). *Id.* at 212. The Court thus concluded that the noncitizen could obtain judicial review of the agency's determination that the facts of his case failed to satisfy the hardship standard. *Id.* at 225–26. The Court cautioned that "[t]he facts underlying any determination on cancellation of removal [were] unreviewable." *Id.* at 225. It thus noted that in a cancellation of removal case, an immigration judge's "factfinding on credibility . . . remain[s]

unreviewable." *Id.* And the Court stated that if an immigration judge decided that the "noncitizen [was] eligible for cancellation of removal," the judge's "discretionary determination on whether or not to grant cancellation of removal in the particular case [was] not reviewable as a question of law." *Id.* at 225 n.4.

Here, consistent with *Wilkinson*, we conclude that we lack jurisdiction to review whether substantial evidence supported the immigration judge's credibility determinations. As the Supreme Court recently made clear, we lack jurisdiction to review an immigration judge's credibility determinations made in a cancellation of removal case. *Id.* at 225.[5]

Hernandez-Rivera and Trejo Rojo also argue that substantial evidence did not support the immigration judge's determination that they were ineligible for cancellation of removal because they had not shown that their removal would impose an exceptional and unusual hardship on a qualifying family member. Although the immigration judge determined that they failed to satisfy the hardship standard, the Board expressly did not reach this issue and thus did not adopt the immigration judge's reasoning on it. Therefore, this issue is not properly before us. *See Malu v. U.S. Att'y*

---

[5] Hernandez-Rivera and Trejo Rojo also argue that the Board committed a legal error in reviewing their appeal when it reviewed the immigration judge's credibility determinations for clear error. Even if we have jurisdiction to review this purely legal issue, we see no error. *See* 8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the immigration judge, including findings as the credibility of testimony, shall be reviewed only to determine whether the findings . . . are clearly erroneous.").

*Gen.*, 764 F.3d 1282, 1289 (11th Cir. 2014) (explaining that this Court will not review findings by an immigration judge that the Board did not adopt), *abrogated in part on other grounds by Santos-Zacaria*, 598 U.S. at 417.

**B.**

In their petition for review, Hernandez-Rivera and Trejo Rojo also raise due process challenges. They assert that they were denied due process when the immigration judge (1) considered their applications for cancellation of removal together instead of reviewing each application separately, (2) was biased against them in reviewing their applications for cancellation of removal, and (3) failed to consider their applications for withholding of removal and CAT relief.

"It is well settled that individuals in [removal] proceedings are entitled to due process of law under the Fifth Amendment." *Frech v. U.S. Att'y Gen.*, 491 F.3d 1277, 1281 (11th Cir. 2007). In immigration proceedings, due process requires that a noncitizen "be given notice and an opportunity to be heard in [his] removal proceedings." *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (internal quotation marks omitted). To establish that a due process violation occurred in removal proceedings, a noncitizen must show that he was "deprived of liberty without due process of law" and that this error "caused [him] substantial prejudice." *Id.* (internal quotation marks omitted). To establish substantial prejudice, the noncitizen must show that "in the absence of the alleged

violations, the outcome of the proceeding would have been different." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

We have recognized that "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." *Tang*, 578 F.3d at 1275. (internal quotation marks omitted). Because cancellation of removal is a form of relief that is "purely discretionary," a noncitizen "does not have a constitutionally protected liberty interest in obtaining cancellation of removal." *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1219 (11th Cir. 2023).

Hernandez-Rivera and Trejo Rojo argue that they were denied due process in connection with the review of their applications for cancellation of removal because the immigration judge considered the applications together and was biased against them. These due process arguments fail because Hernandez-Rivera and Trejo Rojo do not have a liberty interest in cancellation of removal, which is purely discretionary in nature. *See id.*

They also argue that they were denied due process when the immigration judge reviewed their applications for withholding of removal and CAT relief. They complain that the immigration judge's time constraints denied them the opportunity to present evidence to support these claims.

We conclude that there was no deprivation of due process here. The transcripts of the proceedings make clear that Hernandez-Rivera and Trejo Rojo's counsel decided from the outset not to present evidence supporting these applications and instead to focus on their applications for cancellation of removal. Although

both Hernandez-Rivera and Trejo Rojo testified before the immigration judge, neither offered any testimony about their fear of persecution on account of a protected feature or discussed any fear of torture. Moreover, after holding a merits hearing over two separate days, the immigration judge left the record open to allow Hernandez-Rivera and Trejo Rojo to submit any additional witness statements or documents. But they submitted nothing. Given this course of events, we cannot say that Hernandez-Rivera and Trejo Rojo were denied an opportunity to be heard. *See Tang*, 578 F.3d at 1275.[6]

In the alternative, even assuming Hernandez-Rivera and Trejo Rojo established that the immigration judge deprived them of a liberty interest by not allowing them to introduce evidence to support their applications for withholding of removal and CAT relief, their due process claim would fail nonetheless because they cannot show substantial prejudice. In their petition for review, they have identified no additional testimony or evidence that they would have submitted. They thus have not carried their burden to show that they would have succeeded in obtaining withholding of removal or CAT relief absent the alleged error. *See Lapaix*, 605 F.3d

---

[6] In their petition for review, Hernandez-Rivera and Trejo Rojo raise their due process argument only in connection with their requests for withholding of removal and CAT relief, not asylum. But even if they had raised a similar due process challenge to the denial of their asylum applications, we would conclude that challenge lacked merit for the same reasons.

at 1143. We thus deny the petition for review of the due process claims.

**PETITION DISMISSED IN PART, DENIED IN PART.**